## STATE OF INDIANA v. TORPHY.

[No. 27,387. Filed June 28, 1940.]

384

*Omer S. Jackson,* Attorney General; *Hubert E. Dirks,* Deputy Attorney General; and *David F. Long,* Prosecuting Attorney, of Bedford, for the State.

*Marshall Woolery* and *Fred N. Fletcher,* both of Bedford, for appellee.

SHAKE, J.—The appellee was charged by affidavit in two counts with second degree burglary and grand larceny. He was tried by a jury and at the conclusion of the state's evidence the trial court sustained a motion for a directed verdict for the defendant. The state has appealed.

The evidence disclosed that on the night of June 14, 1939, the building of the Fraternal Order of Eagles in Bedford, Indiana, was broken into and property and money of the value of $178 taken. The interior of the building was ransacked and a music box was broken and money taken therefrom; cigarettes were stolen; articles of furniture scattered about; and an iron safe weighing more than 600 pounds, which contained the funds of the organization, was carried away. An inspection of the premises revealed that entrance to the building had been gained by means of prying off a window in the rear. An unsuccessful effort had apparently been made to open a window on the side of the building. Fresh tire marks of a motor vehicle were found near the window in the rear of the premises at a place not customarily used for driving or parking automobiles. A lattice fence which was painted green was found to have been broken at a point near the car tracks. The stolen safe was found two or three days later near a cemetery about two miles from the city, and an automobile belonging to the appellee was found abandoned on a street in Bedford. Plaster paris casts were made of the tracks at the rear of the Eagles' building by police officials, and from these casts the kind of tires that had made the tracks was determined. The appellee's car was equipped with such tires and there was evidence that he had recently purchased these tires from a dealer. There were marks on the bumper of the appellee's car bearing evidence of green paint of the same color as that on the lattice fence. The angle of the marks on the bumper corresponded with the angle of the broken lattice. Near the safe was found a "stone point," which is a tool used by masons. The point fitted marks left on the window that had been

forced open. There were grooves on the right doorsill of the car which corresponded with the wheels of the safe. A hammer was found in the rear seat of the car and it had a peculiar face which likewise corresponded with markings on the bottom of the safe where it had been opened. The appellee was seen operating his automobile on the night of the robbery, but he did not appear at his rooming house thereafter. He was arrested in Bloomington some time later, at which time he denied his identity and gave an assumed name.

The appellee moved for a directed verdict in his favor, on the ground that "the State has failed to prove every material allegation of the affidavit herein, or of either count thereof, against him beyond a reasonable doubt." It is the state's contention that both the prosecuting attorney and the trial judge misconceived the purpose and functions of a motion for a directed verdict; that such a motion should be denied when there is some evidence to support the material allegations of the charge; and that the state's evidence is not required to establish guilt beyond a reasonable doubt in order to withstand a motion for a directed verdict.

The evidence was clearly sufficient to authorize the jury to find that the *corpus delicti*, that is that the crimes charged had been committed by someone, was established. *Hunt* v. *State* (1939), 216 Ind. 171, 23 N. E. (2d) 681. The fact that the tracks observed at the scene of the crimes were made by tires like those with which appellee's car was equipped and which he had recently purchased; that there were marks on the doorsill of the car which coincided with the wheels of the safe; that the bumper of the car bore evidences of green paint like that on the broken lattice; that the marks on the bumper were at the same angle as those on the broken lattice; that the

markings on the bottom of the safe corresponded with the peculiar face of the hammer found in the appellee's car; that the mason's tool found near the safe had apparently been used to pry open the window by which access was gained to the building—these facts in their cumulative effect were sufficient to justify the inference that the appellee's automobile was used in the perpetration of the crimes charged. It is true, as appellee suggests, that these are merely circumstances, but they were nevertheless circumstances of a highly persuasive character. There is an increasing resort to science in the administration of criminal law, and evidence thereby adduced, though of a circumstantial nature, is not infrequently more convincing and more safely followed than direct testimony. This is especially true with respect to those inquiries directed at the identification of persons and objects. Having concluded that there was competent evidence of the *corpus delicti* and that appellee's automobile was used in the commission of the crimes for which appellee was on trial, the only remaining element of the offenses which the state was required to establish by some competent evidence was the appellee's connection with the commission of said offenses. This connection was established in a degree sufficient to take the case to the jury by the circumstances already shown and the further facts that appellee was in Bedford up to and including the night of the crimes, but that he immediately absented himself from his rooming house and was not seen in Bedford thereafter, and that when he was arrested at Bloomington several weeks later he denied his identity and gave an assumed name. "The wicked flee when no man pursueth: but the righteous are bold as a lion." Proverbs, 28:1. Flight of the accused, concealment, assumption of a false name, and related conduct are admissible as evidence of con-

sciousness of guilt, and thus of guilt itself, but it is for the jury to determine what weight and value should be given to such evidence. *State* v. *Lambert* (1908), 104 Maine 394, 71 A. 1092, 15 Ann. Cases 1055.

It is thoroughly settled by the decisions in this state that a peremptory instruction directing a verdict in favor of the accused in the trial of a criminal case can only. be given where there is a total absence of evidence upon some essential issue, or where there is no conflict in the evidence and it is susceptible of but one inference, and that inference is in favor of the accused. Where a determination of the issue involves the weight of the evidence or the credibility of witnesses, it is an invasion of the province of the jury for the court to direct a verdict. *State* v. *Kubiak* (1936), 210 Ind. 479, 4 N. E. (2d) 193. We conclude that the trial court erred in directing the jury to return a verdict of not guilty.

The appeal is therefore sustained.

NOTE.—Reported in 28 N. E. (2d) 70.