GREENTREE *v.* STATE OF INDIANA.

[No. 31078. Filed November 3, 1969. Rehearing denied December 3, 1969.]

*Jerry Newman,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, *Rex P. Killian, Deputy* Attorney General, for appellee.

GIVAN, J.—Appellant was charged by affidavit with the crime of robbery as defined by Burns' Indiana Statutes § 10-4101. Trial was had by jury resulting in a verdict of guilty, upon which the appellant was sentenced to the Indiana State Reformatory for not less than ten years nor more than twenty-five years and disfranchised and rendered incapable of holding any office of trust or profit for ten years.

Appellant assigns the overruling of his motion for new trial as error in this Court.

The evidence most favorable to the State is that on May 31, 1966, at about 9:30 to 10:00 P.M., Sandra Kay Prewitt, Marilyn Faye Brewster, Robert "Speedy" Glidden and Joe Weatherford went to a Wake-Up station where appellant was employed. Appellant left work at the Wake-Up station with these persons in Weatherford's car. They drove to a tavern on Ohio Street where Glidden was dropped off. They then proceeded to drive around in the car, during which time appellant asked Sandra Prewitt if Weatherford had any money with him. She answered that he did have what looked to her to be a lot of money. With appellant driving Weatherford's

car and Prewitt in the front seat with him and Weatherford and Brewster in the rear seat, they drove to Ellenberger Park for the purpose of "parking" where they arrived about 11:30 P.M. to midnight.

Sandra Prewitt testified that after they had parked for a short time appellant hit Weatherford in the side of the head with a hammer. Appellant then ordered Weatherford out of the car and demanded his money. Upon Weatherford replying that he did not have any, appellant pulled a knife with a six inch open blade and again struck Weatherford with the hammer.

The two girls, Prewitt and Brewster, searched Weatherford's pockets for the money, then Brewster discovered Weatherford's billfold in the car.

Appellant again hit Weatherford, who ran from the scene to a nearby residence where he asked the occupants to call the police.

Prewitt, Brewster and appellant then returned to appellant's apartment, which was also occupied by Sandra Prewitt and Marilyn Brewster. At that time appellant told Prewitt that he had parked the car on Ninth Street and had wiped off all of the finger prints.

Prewitt further testified that all of the money and papers taken from Weatherford were turned over to the appellant.

The next morning while appellant was eating breakfast in a restaurant, police officers entered and inquired as to his whereabouts, but the employee not realizing he was there, told the police he had not seen appellant. The police left without seeing appellant.

Appellant himself testified that upon learning the police were looking for him he started to go to work, but as he approached the place of his job he saw four or five policemen and so he did not go to work.

Appellant was arrested on the evening of the same day by Officer Hawkins. Upon arresting the appellant Officer Haw-

kins placed him in his patrol car. After removing appellant from the car he found two pieces of paper on the floor in the back seat where appellant had been sitting. These papers were not there before appellant entered the car. One piece of paper, being State's Exhibit 1, was a purchaser's receipt purchased by Joe Weatherford for $500. The second piece of paper, being State's Exhibit 2, was a Western Union Telegraph Company receipt, received from Joe Weatherford for $15.00. State's witness Prewitt identified Exhibit 1 as being one of the papers taken from Weatherford's billfold and turned over to the appellant. Weatherford identified Exhibits 1 and 2 as being in his wallet at the time it was taken from him on May 31, 1966, by the appellant.

Appellant first claims error in the giving to the jury, over objection, Court's Instruction No. 32, which instruction reads as follows:

"The flight of a person immediately after the commission of the crime with which he is charged if there was such a flight, is a circumstance to be considered by you in connection with all the other evidence to aid you in determining the question of his guilt or innocence."

To the giving of this instruction the appellant made the following objection:

"*MR. WURSTER*: Your Honor, the only instruction that the Court has that we would object to would be Instruction No. 32, which instruction pertains to flights by the defendant after the crime. We feel that in this case there was no evidence that the defendant—well, there was some evidence perhaps, that the defendant might have been at Ellenberger Park and left the scene. However, I think it would be up to the jury to decide, it's going to be for the jury to decide whether or not in fact the defendant was in the park. Furthermore, it was shown that the defendant never left the city of Indianapolis. In fact, he was arrested several blocks from his apartment. For that reason, we see no reason for an instruction pertaining to a flight by the defendant."

As stated in the above objections, there is evidence in the record that appellant and his companions left Ellenberger

Park immediately after Weatherford escaped from them and went to a nearby home to summon aid.

There is also further evidence as set out above that the appellant, after learning the next morning that police were in fact searching for him, deliberately eluded police until he was involuntarily taken into custody by Officer Hawkins in the evening of that day. This evidence was sufficient to warrant submission of the fact to the jury as to whether or not appellant had in fact attempted flight after the commission of the crime. These facts being in the record for submission to the jury, the trial court was correct in the giving of Instruction No. 32. This Court has previously stated:

". . . Flight of the accused, concealment, assumption of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself, but it is for the jury to determine what weight and value should be given to such evidence." *State* v. *Torphy* (1940), 217 Ind. 383, 387, 28 N. E. 2d 70.

Appellant next argues that the evidence is insufficient to support the verdict. The main attack of appellant is that although the State called five witnesses in chief, the principal witness, Sandra Kay Prewitt, was for all intents and purposes an accomplice, and that she was awaiting sentence on a previous conviction, and further that she was the mother of an illegitimate child, a former inmate of the girls school, and had been drinking on the night of the alleged crime, and further that she was shown to be an intimate friend of Robert "Speedy" Glidden, who also had been suspected by the police of having committed the robbery.

It is certainly not unusual for crimes to be committed in the presence of persons of questionable character and certainly it is within the purview of a trier of fact, such as the jury in the case at bar, to take these factors into consideration in weighing such testimony from such persons. However, it is not within the purview of this Court sitting as an appellate tribunal to second-guess or reweigh the

evidence. *Finch* v. *State* (1967), 249 Ind. 122, 12 Ind. Dec. 22, 231 N. E. 2d 45; *Byrd* v. *State* (1962), 243 Ind. 452, 185 N. E. 2d 422.

The appellant also claims that the testimony of Officer Scott was confused and contradictory with regard to the identity of the assailant in the alleged crime in that he first described Robert "Speedy" Glidden as the assailant and then after further conversation with the Prosecuting Attorney testified that it was the appellant who was the assailant. This again in view of all of the evidence and attendant circumstances was a matter for the trier of fact and is not enough to justify this Court's setting aside of the verdict in view of all of the evidence in this case.

Appellant also attempted to submit evidence of alibi; however, here again this was a matter of conflicting evidence for the determination of the jury, which under the above authorities will not be weighed by this Court.

We find no reversible error in this case. The trial court is in all things affirmed.

Arterburn and Hunter, JJ., concur; Jackson, J., dissents with opinion in which DeBruler, C.J., concurs.

### DISSENTING OPINION

JACKSON, J.—I am unable to agree with the conclusions reached by the majority opinion and dissent thereto.

On June 3, 1966, there was filed in the office of the clerk of the Criminal Court of Marion County, Indiana, a document, not sworn to and not verified, denominated in the record as an "AFFIDAVIT FOR ROBBERY." The document referred to purports to charge appellant and another with the crime of robbery as defined by § 10-4101 Burns' Indiana Statutes. A xerox copy of such document is attached hereto, made a part hereof and marked "Exhibit A".

The document referred to was signed by one Millard T. Swain but not verified by his oath. Defendant-appellant

waived arraignment and entered a plea of not guilty to the charge embraced in the purported affidavit. Trial was had by jury, which returned its verdict, finding appellant "guilty as charged in the affidavit" and disfranchised him for a period of ten years. The court ordered a precommitment investigation and report filed; thereafter on September 28, 1966, appellant was by the court, on the finding and verdict of the jury, sentenced to the Indiana State Reformatory for a period of not less than ten (10) years nor more than twenty-five (25) years.

At the time this action was filed in the office of the clerk of the trial court there was in full force and effect the following statute:

"9-908 [2150] Affidavit—Prosecution by.—All public offenses, except treason and murder, may be prosecuted in the circuit or criminal court *by affidavit filed* in term time, in all cases except when a prosecution by indictment or affidavit for the same offense is pending at the time of the filing of such affidavit. And such affidavit may be filed in vacation time as in term time, but only with the approval of the judge of such court, who may arraign and admit to bail as in term time, or may waive a plea of guilty and proceed forthwith as in term time. [Acts 1905, ch. 169, § 118, p. 584; 1927, ch. 132, § 4, p. 411] being § 9-908 Burns' Ind. Ann. Stat. 1956 Repl." (Emphasis supplied)

The Court, sua sponte, here must and does, by way of this dissent, take judicial notice that the proceeding before the trial court was and is a nullity as the State failed to comply with the statute, *supra*, by failing to file an affidavit lawfully charging the offense. Hence, the jurisdiction of the court was not invoked.

In *Pease* v. *State* (1921), 74 Ind. App. 572, 129 N. E. 337, a document, denominated a complaint, was filed in the Juvenile Court of Marion County charging the appellant with the commission of a crime. The document, although signed by the maker, was not verified by his oath. The appellant was arraigned, pleaded not guilty and was subsequently tried by

the court and found guilty of the crime as charged. In holding that the unsworn document was insufficient to invoke the jurisdiction of the trial court, the Appellate Court stated:

> "In this state it has been held consistently that a criminal action can be commenced only in the manner provided by law, and that it is the filing of the accusation in *lawful form* that invokes the jurisdiction of the court in the particular cause. *Byrne* v. *State* (1874), 47 Ind. 120; *Allstodt* v. *State* (1874), 49 Ind. 233; *Hoover* v. *State* (1886), 110 Ind. 349, 11 N. E. 434; *Butler* v. *State* (1887), 113 Ind. 5, 14 N. E. 247; *Miller* v. *State* (1889), 122 Ind. 355, 24 N. E. 156; *Smith* v. *Clausmeier* (1893), 136 Ind. 105, 114, 35 N. E. 904, 43 Am. St. 311; *Gardner* v. *State* (1903), 161 Ind. 262, 68 N. E. 163; *State* v. *Simpson* (1905), 166 Ind. 211, 76 N. E. 544, 1005. See 22 Cyc 171.

> It is a universal principle as old as the law that the proceedings of a court without jurisdiction are a nullity and its judgment void." (Emphasis supplied)

The court went on to say that there must be strict compliance with the legislative requirements for the commencement of a criminal action since the power of the legislature to prescribe the requirements is plenary.

We acknowledge that some exceptions have been made to the strict compliance doctrine enunciated by the court in *Pease.* However, the exceptions made have always concerned defects in form only, and which do not, as here, go to the jurisdiction of the court. In *Gilley et al.* v. *State* (1949), 227 Ind. 701, 88 N. E. 2d 759, the affidavit upon which the appellants were convicted was not sworn to by the same person whose name was subscribed to it. No objection was made to the affidavit in the proceedings before the trial court. On appeal the appellants argued that the conviction was a nullity in that the jurisdiction of the trial court had not been invoked since the affidavit invoking jurisdiction of the trial court was defective. The court in *Gilley* held that the defect was the type of defect that could be waived in that it "did not go to the jurisdiction of the court over the general subject matter

of the action or render the affidavit insufficient to invoke the jurisdiction of the court."

The court in Gilley distinguished that case from *Pease* v. *State, supra,* by stating:

> "Of course an affidavit must be filed in order to invoke the jurisdiction of the court, and was filed in this case, wherein this case differs from *Pease* v. *State* (1921), 74 Ind. App. 572, 129 N. E. 337, upon which appellants here lay great stress, and wherein it is stated in the body of the opinion no affidavit was filed. It was merely an unverified complaint." 227 Ind. at 708.

In the case at bar, just as in *Pease* v. *State, supra,* the document filed in an attempt to invoke the jurisdiction of the trial court was not verified by the oath of the maker of the document. Thus, it too constitutes, as stated in *Gilley,* "merely an unverified complaint." As such, it is not an *affidavit* as required by § 9-908, supra. It therefore cannot have invoked the jurisdiction of the trial court. *Gilley et al.* v. *State, supra*; *Pease* v. *State, supra.*

Moreover, the defect being one which goes to the jurisdiction of the trial court, the proceedings therein were a nullity and even the appellant's unqualified consent could not have conferred jurisdiction on the trial court. Jurisdiction is a matter between the legislature and the courts, and where the legislature has prescribed a manner for invoking the jurisdiction of the courts the parties cannot waive the lack of jurisdiction in those cases in which the legislative mandate has not been followed. *Pease* v. *State, supra.* In short, it is the legislature and the Constitution that creates the jurisdiction of the courts, and not the parties brought before the court.

It would be a simple matter for this Court to look aside and refuse to note the illegality of the lower court's proceedings. However, the fact remains that a criminal proceeding may only be instituted in a manner prescribed by law. The statute, § 9-908, *supra,* requires the filing of an *affidavit* to invoke the

jurisdiction of the trial court. Absent an affidavit, as here, there is no jurisdiction. There being no jurisdiction, it follows that the court was powerless to act in the present case.

We grant that in certain cases this Court has held that defects in the statutory requirements for criminal affidavits may be waived when not timely presented to the trial court. See, *Mattingly* v. *State* (1951), 230 Ind. 431, 104 N. E. 2d 721. However, those cases dealt with the situation in which an affidavit, although defective, was in fact filed. Here, however, there was no affidavit filed, but only an "unverified complaint." Thus, in the case at bar we are not faced with merely a defective affidavit, but with a document that is not, and cannot be an affidavit because it is unverified by the oath of the person who made the statement. This is not merely a technical distinction or a play on semantics. Rather, it is the difference between following the law as prescribed by the legislature in § 9-908, *supra*, and in extending judicial authority into those areas into which we are not authorized to intrude.

The appellant has filed his motion for a new trial on other proper grounds, and has filed his assignment of errors herein, together with briefs in support. These we have not and need not consider in arriving at our determination of this cause or in the writing of this dissent.

This cause should be reversed and remanded to the trial court with instructions to order appellant returned from the Indiana Reformatory to the Marion County Jail, Indianapolis, Indiana, without delay; that at the earliest opportunity thereafter appellant be brought into the Marion County Criminal Court, Division Two, whereupon the judge should reverse the finding and judgment of conviction, and the sentence imposed heretofore therein; and should thereupon enter a new finding and judgment to the effect that the former proceedings in said cause, here appealed from, were and are totally void and invalid and appellant immediately discharged from custody without delay, bond or day.

DeBruler, C.J., concurs.

NOTE.—Reported in 251 N. E. 2d 835.

State of Indiana, Marion County, ss:

| | |
|---|---|
| The State of Indiana | In the Criminal Court |
| vs. | of Marion County |
| Marilyn Fay Brewster | January Term, 1966 |
| Kenneth Wayne Greentree | Affidavit for Robbery |

Be It Remembered, That, on this day before me, Noble R. Pearcy, Prosecuting Attorney of the Nineteenth Judicial Circuit, personally came Millard T. Swain who, being duly sworn, upon his oath says that Marilyn Fay Brewster and Kenneth Wayne Greentree on or about the 1st day of June, A.D. 1966, at and in the County of Marion in the State of Indiana, did then and there unlawfully, feloniously, forcibly by violence and putting Joe Weatherford in fear, take from the person and possession of the said Joe Weatherford, money then and there of the value of Five Hundred Dollars ($500.00) in lawful money, which property the said Joe Weatherford then and there lawfully held in his possession and was then and there the property of Joe Weatherford, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

/s/ Millard T. Swain

Subscribed and sworn to before me, this 3rd day of June, A.D., 1966.

-------------------------------------
Prosecuting Attorney
Nineteenth Judicial District