REAGON *v.* STATE OF INDIANA.

[No. 269-S-33. Filed November 14, 1969. Rehearing denied January 14, 1970.]

*James R. White,* New Castle, for appellant.

*Theodore L. Sendak,* Attorney General, *Murray West,* Deputy Attorney General, for appellee.

ARTERBURN, J. —The facts in this case are uncontroverted. Appellant was indicted by the grand jury of reckless homicide, manslaughter, and driving under the influence of intoxicating liquor. The indictment charged that on July 14, 1967, appellant was traveling on Indiana State Road #3 at an excessive rate of speed and while under the influence of intoxicating liquor. While attempting to pass another car on an area of obstructed vision, appellant's car collided with a car driven by Robert L. Thompson II. Thompson suffered mortal wounds as a result of the crash. Appellant suffered severe physical injuries and brain damage as a result of the accident.

In response to a petition filed by the state, the court appointed two disinterested physicians to examine appellant and "to testify to the court regarding his sanity, specifically, whether or not the defendant had sufficient comprehension to understand the proceedings and to make his defense and aid his counsel in making his defense." The physicians reported that they were of the opinion that appellant did not have sufficient comprehension to understand the nature of the action against him. On April 12, 1968, the trial judge delayed and continued the trial and ordered appellant committed to

the Department of Mental Health pursuant to Burns' Ind. Stat. Anno. § 9-1706a because of lack of sufficient comprehension to make a defense.

On August 20, 1968, a letter was written to the trial judge by the Superintendent of the Richmond State Hospital which stated that appellant had improved and further said:

> "It is the current opinion of our staff that this man does not now lack comprehension to stand trial and that he is able to participate in his own defense."

This certification was made pursuant to the statute, Burns' Ind. Stat. Anno. § 9-1706a, which provides:

> "Whenever the defendant shall become sane the superintendent of the state psychiatric hospital shall certify the fact to the proper court, who shall enter an order on his records directing the sheriff to return the defendant . . . Upon the return to court of any defendant so committed he or she shall then be placed upon trial for the criminal offense the same as if no delay or postponement had occurred by reason of defendant's insanity."

On August 28, 1968, the appellant was ordered released from the Richmond State Hospital and returned to the jurisdiction of the court. On October 8, 1968, the appellant, by his attorney, filed his motion for a continuance, contending that appellant's loss of memory precluded appellant from aiding his attorney in his defense, thus making a fair trial impossible. The appellant was then tried by the court and found guilty. The sole error alleged on appeal is the overruling of the motion for a continuance. A hearing on the motion for continuance was held on October 28, 1968, and testimony was heard.

Testimony by William E. Murray, a psychiatrist and physician, who was at the time superintendent of New Castle State Hospital, in answer to questions by the court, was to the effect that the appellant comprehended and understood the proceedings against him. Murray testified that appellant could understand an intelligent conversation and understood completely

the legal proceedings. He further testified that appellant could reason and could communicate with his attorney.

The court denied the continuance. The appellant contends there was an abuse of discretion. The state, on the other hand, urges that the court had no discretion in view of the certification as to appellant's mental condition, made pursuant to the statute. Whether the legislature may take from the court its discretionary function in determining whether or not a defendant may have a fair trial, we need not consider, since in our judgment we must first determine if there was sufficient evidence to support the determination of the trial court. An examination of the evidence upon which the court acted shows it not only had the certification that the appellant was able to stand trial from the state health agency empowered by the statute to make such determination, but also the testimony given at the hearing on the continuance. This evidence entirely supported the judge's determination that the appellant was competent to stand trial. We find no evidence introduced to the contrary. We may not overturn a trial court's finding where the evidence supports it.

In the consideration of the question before us we must draw a distinction between a mental condition of insanity, which is a valid defense to a criminal charge, and a mental incapacity, such as amnesia, which may or may not prevent a defendant from aiding his counsel in making a valid defense. In this connection the rule has been generalized to the following extent:

> "In determining a defendant's capacity to stand trial, the test is whether he has the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to co-operate with his counsel to the end that any available defense may be interposed . . ." 21 Am. Jur. 2d *Criminal Law*, § 63, p. 144.

Under the facts before us it appears that the appellant is contending that because he does not remember the facts rela-

tive to the accident, although he does understand the charges against him and is fully aware of events, since the accident, still, he should not be put on trial until he can remember events in regard to which his memory now fails him. With this contention we cannot agree. Many times in a trial of a criminal case evidence is lost, a material witness dies, or, as in this case, the defendant has amnesia as to certain events or a time. Still, such handicaps from a defendant's point of view cannot prevent a trial from taking place eventually. Rarely would we find a case in which a defendant could not contend that he was deprived of some evidence and therefore he ought not to be tried. However, evidence which is never to be obtained because of the death of witnesses cannot prevent a criminal trial from taking place, and that must be said from the state's point of view as well as that of the defendant.

The testimony of Dr. Murray, as well as the certification from the state hospital, is sufficient to support the trial court's judgment in denying a continuance in this case.

The judgment of the trial court is affirmed.

Hunter and Givan, JJ., concur; DeBruler, C.J., dissents with opinion, in which Jackson, J., concurs.

## DISSENTING OPINION

DeBruler, C.J.—I dissent from the majority opinion and would hold that the trial court should have granted appellant's motion for continuance on the grounds that he was not legally competent to stand trial.

As a result of the accident appellant was severely injured, receiving a depressed skull fracture, and was hospitalized for several months. On March 28, 1968, at a hearing to determine whether appellant could stand trial two doctors testified that appellant had organic brain damage caused by the skull fracture. Dr. McDonald testified that as a result of the injury appellant could not understand the charge against him. Dr.

Murray, a psychiatrist, stated that appellant could not assist counsel in his defense due to the fact that the brain damage resulted in amnesia concerning the circumstances surrounding the accident.

In Indiana the test for capacity to stand trial is set out in Acts 1951, ch. 238, § 2, as last amended by Acts 1967, ch. 291, § 2, being Burns' Ind. Stat. Ann. § 9-1706(a) which says in relevant part:

> "If the court shall find that the defendant has not comprehension sufficient to understand the proceedings and make his defense, the trial shall be delayed or continued on the ground of the alleged insanity of the defendant."

The trial court found that appellant did not have "comprehension sufficient to understand the criminal action against him and the proceedings thereon and to make his defense, and that he is without mental capabilities to comprehend and understand the criminal charge against him and is unable to assist his attorney in preparing his defense." Appellant was committed to Richmond State Hospital and the staff there concurred in that finding in a report filed May 15, 1968.

On September 28, 1968, in a letter to the court, Dr. Klepfer, the Superintendent of Richmond State Hospital, stated that appellant had improved and no longer lacked the comprehension to stand trial. However, he also said at that time that appellant could only remember events occurring since the accident.

Upon receiving this letter the trial court, without a hearing of any kind, set the cause for trial. Appellant moved for a continuance, alleging:

> "That in truth and in fact the above named defendant does not have sufficient comprehension to act in his own defense or to testify concerning any defenses the defendant might have to the charges now pending against him. That to allow the State of Indiana to proceed with the trial of the action now pending would be a deprivation of defendant's constitutional rights to assist in his own defense."

On October 28, 1968, at the hearing on the motion for continuance, Dr. Murray testified as follows concerning an examination of appellant made three weeks prior to the hearing:

"A. I found that Mr. Reagon was very manneristic in his behavior, and he had a lot of blinking behaviour, held his head to one side and could not speak above a whisper. And on the mental status, he had a lot of memory defects, he had remembered seeing me before but was not able to say when; I felt there was defective memory of recent events and remote events; he generally showed no abnormal thought content, the defects on the mental status were those of an organic nature with inability to remember the events of the accident; generally a loss of time relationships of the past year or so; he couldn't generally say when something happened. In addition to this, he seemed to show some difficulty in his ability to concentrate on the matter at hand.

Q. Again, for the purpose of the record, will you explain what you mean by organic brain damage?

A. Where there has been apparently some actual physical damage to the brain.

Q. And you found that was a fact in the case of Everett Reagon?

A. Yes. There are certain psychological and psychiatric symptoms which are a classical attribute to such brain damage, such as defects in memory, judgment and orientation. He does show defects in memory, recent and remote events, some defects in orientation and he didn't know the date, he did know the place; he was oriented in so far as himself, he knew who he was. As far as defects in judgment, I couldn't find any at that time.

Q. Doctor, how would you describe his condition as you saw him and observed him on October 7, 1968, together with what you personally observed, and together with the results of the EEG which was given the following day, describe his physical and mental condition.

A. I think we find a man who has had a very severe physical trauma to himself which has left certainly scars in more ways than one; I am not in a position to determine what other physical damage was done to the rest of his body's system, but I can testify that there was some brain damage incurred to him during the accident; a man who is left with difficulties in concentra-

tion, inability to remember what happened, not only what happened at the time of the accident but of scattered events between then and now; a man who is apparently under a lot of nervous tension over it is shown by his difficulty in speaking over a whisper; the grimacing and blinking of the eyes, I would suggest are mechanisms of trying to deal with anxiety and tension over this. A man whose functioning, the level is far below than what he was able to function before the accident.

Q. Doctor, one final question. In your opinion, of his own knowledge, does Everett Reagon have any recollection of the circumstances at all surrounding the accident that occurred on July 14, 1967?

A. Of his own knowledge, no sir."

The trial court denied the motion for continuance and he found appellant was competent to stand trial even though he could not recall any of the events surrounding the accident. Appellant contends that this was the sole reversible error.

The majority opinion states that the trial court's conclusion was supported by Dr. Murray's testimony and the report of Dr. Klepfer. This makes it appear as if the issue on appeal is whether there was sufficient factual support for the trial court decision. However, that is not the issue here at all. Dr. Murray, Dr. Klepfer and the trial court all agreed appellant was rational at the time of the trial but that as a result of organic brain damage appellant could not remember the circumstances surrounding the accident. The true issue is whether that fact means that appellant did not have "comprehension sufficient . . . to make his defense" within Burns' § 9-1706(a), *supra*. The trial court was called upon to interpret the meaning and scope of a legal standard and he had no discretion to apply an erroneous one.

It is apparent from the court's findings that the trial court gave serious consideration to this issue and I agree with the trial court when he said that the statutory phrase "make his defense" means that the appellant could "rationally conduct his defense" and was "mentally capable of rendering his attorney such assistance as a proper defense demands."

The fact that appellant was capable of rational conversation with his attorney, however, did not mean that he could be of any assistance to that attorney in making his defense. His attorney did not need a companion, he needed to know facts which would help him undermine the State's case or present a stronger case for the appellant. That could best be done by effective cross examination of the witnesses for the State, or by presenting witnesses who would testify in favor of appellant.

Appellant had a federal and state constitutional right to confront the witnesses against him and to cross examine them. *Pointer* v. *Texas* (1965), 380 U. S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923; Art. 1, § 13, Indiana Constitution, *Marjason* v. *State* (1947), 225 Ind. 652, 75 N. E. 2d 904. This is an empty right if he is faced with persons he cannot remember having seen, who describe his participation in events he cannot recall. Appellant could not give his attorney clues on which counsel could plan an effective cross examination. For example, appellant was accused of being drunk but he had no way to relate to his attorney circumstances and events which might show the witness was mistaken or lying. All of the pre-accident details so important in determining whether appellant was in fact drunk are lost to appellant and his counsel.

Appellant also had a constitutional right to subpoena witnesses in his behalf. Sixth and Fourteenth Amendment, United States Constitution, *Washington* v. *Texas* (1967), 388 U. S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019; Art. 1, § 13, Indiana Constitution, *Rice* v. *State* (1967), 248 Ind. 200, 223 N. E. 2d 579; *Siberry* v. *State* (1892), 133 Ind. 677, 33 N. E. 681. How could appellant's attorney know who to subpoena since appellant could not tell him of possible witnesses who might contradict the State's case?

In addition, appellant had a right to testify in his own behalf. *Ferguson* v. *Georgia* (1961), 365 U. S. 570, 81 S. Ct. 756, 5 L. Ed. 2d 783; Acts 1905, ch. 169, § 235, being Burns'

Ind. Stat. Ann. § 9-1603, *Hiatt* v. *State* (1920), 189 Ind. 524, 127 N. E. 277; *Bird* v. *State* (1886), 107 Ind. 154, 8 N. E. 14; *Hartford* v. *State* (1884), 96 Ind. 461. But about what could appellant have testified since he did not remember the accident? How could appellant help his attorney plan the presentation? The usefulness of this procedural right is reduced to the vanishing point when the appellant cannot remember any of the facts surrounding the accident.

Appellant's amnesia effectively eliminated his "mental capacity to render his attorney such assistance as a proper defense demands" and thus was incompetent to stand trial under Burns' § 9-1706(a), *supra*. It also prevented appellant from having meaningful assistance of counsel in exercising his constitutional rights to cross examine the witnesses against him, to subpoena witnesses in his behalf, and to testify in his own defense. When appellant was tried without an ability to use those procedural rights he was denied a fair trial.

Although this is a question of first impression in Indiana it has been discussed in other jurisdictions. In *Wilson* v. *United States*, 391 F. 2d 460 (D.C. Cir. 1968), the defendant had organic brain damage which resulted in a loss of memory of the events surrounding the crime, although he had been rational at the time of the crime and was so at the trial. The court approved the following language of the district court:

> " '. . . a loss of memory should bar prosecution only when its presence would in fact be crucial to the construction and presentation of a defense and hence essential to the fairness and accuracy of the proceedings." 319 F. 2d at 462.

However, the court remanded the case to the district court for more extensive findings on the question whether defendant's loss of memory did in fact deprive him of effective assistance of counsel and a fair trial. One of the three judges dissented saying that the robbery conviction should have been reversed on the grounds that defendant's loss of memory concerning the crime made him *per se* incompetent to stand trial.

The court was *unanimous* in its opposition to the position taken by the majority opinion in this case.

Another federal case in opposition to the view of the majority opinion is *Hansford* v. *United States,* 365 F. 2d 920 (D. C. Cir. 1966), when the court in commenting on the test for competency to stand trial set out in *Dusky* v. *United States* (1960), 362 U. S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824, said:

"According to the Supreme Court, the test of competency must be whether [the accused] ** has sufficient present ability to consult with his lawyer with a reasonable degree of *rational* understanding—and whether he has a *rational* as well as factual understanding of the proceeding against him.

Subsumed under this formulation is the requirement that the defendant's memory and intellectual abilities, which are crucial to the construction and presentation of his defense, must not be substantially impaired by mental disorder. (Emphasis added.)" 4 L. Ed. 2d at 922.

The relevance of a defendant's amnesia to his competency to stand trial was clearly seen by the judge in *United States* v. *Chisolm,* 149 F. 284 (S. D. Ala. 1906). In a hearing to determine whether the defendant was competent to stand trial, the judge charged the jury as follows:

"The question the court submits to you is whether the prisoner at this time is possesed of sufficient mental power, and has such understanding of his situation, such coherency of ideas, control of his mental faculties, *and the requisite power of memory,* as will enable him to testify in his own behalf, if he so desires, and otherwise to properly and intelligently aid his counsel in making a rational defense.

\* \* \*

"Nevertheless, a person, though not entirely sane, may be put upon trial in a criminal case if he rightly comprehends his own condition with reference to the proceedings, and has such possession and control of his mental powers, *including the faculty of memory,* as will enable him to testify intelligently and give his counsel all the material facts bearing upon the criminal act charged against him and material

154

to repel the criminating evidence, and has such poise of his faculties as will enable him to rationally and properly exercise all the rights which the law gives him in contesting a conviction." (Emphasis added.) 149 F. 285.

The underlying assumption of the majority opinion is that there is something wrong with a legal principle which allows one charged with a crime to go free without being acquitted in a trial.

I believe it is of no relevance that appellant's condition may be permanent and that he may go free—untried due to the amnesia and uncommitted to a mental institution because appellant could not be helped there and is currently rational and non-dangerous. There is nothing in our system of law that requires that every defendant charged with a crime must be tried for it or be committed to a mental hospital. These crevices in the system exist, are rarely exposed, and actually demonstrate a certain structure in the system which is a safeguard of individual liberty.

For these reasons the judgment of the trial court should be reversed.

Jackson, J., concurs.

NOTE.—Reported in 251 N. E. 2d 829.