NATHANIEL HAROLD HARRIS v. STATE OF INDIANA.

[No. 473S75. Filed July 24, 1974. Rehearing denied September 16, 1974.]

*James L. Brand*, of Greenfield, for appellant.

*Theodore L. Sendak*, Attorney General, *A. Frank Gleaves, III*, Deputy Attorney General, for appellee.

ARTERBURN, C.J.—This appeal is from a judgment of the Superior Court of Hancock County finding Appellant guilty, after a jury trial, of second degree murder. IC 1971, 35-13-4-1 [Burns Ind. Ann. Stat. § 10-3401 (1956 Repl.)]. For an understanding of the numerous issues raised by Appellant a recitation of the facts relevant to the alleged crime and a recitation of the history of the legal proceedings themselves is required.

At about 6:00 p.m. on October 12, 1965, Indianapolis police investigated a burglary report at 2327 N. Meridian. Inside the building they found Appellant who was not authorized to be there. Appellant was arrested and the paddy wagon was called. Appellant was placed in the rear of the paddy wagon and the arrest slip handed to Officer Graham, the driver of the wagon. A few minutes later two police officers entered the fourth floor elevator of Police Headquarters, located about three (3) miles from 2327 N. Meridian, and found Officer Graham's hat on the floor of the elevator. The officers rode the elevator to the basement where they found Officer Graham lying on the floor in a pool of blood with a gunshot wound in the head. Appellant's arrest slip was clutched in the officer's hand. Appellant's car coat was found nearby. Officer Graham's gun and badge were on the floor a few feet from his body. Officer Graham died from the gunshot wound.

Two days later Appellant was found hiding in rafters in a home in Indianapolis. A fingerprint expert testified that a palm print lifted from Officer Graham's revolver matched the palm print of Appellant. We believe that on appeal this record—with inferences favorable to the State—is sufficient circumstantial evidence for the conviction. *Blackburn* v.

*State* (1973), 260 Ind. 5, 291 N.E.2d 686, and cases cited therein; *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554.

Appellant was arraigned on November 18, 1965, and entered a plea of not guilty before the Honorable Saul Rabb, Presiding Judge of the Marion Criminal Court, Division II. Appellant filed a plea of insanity and was examined by two court-appointed doctors. On January 20, 1966, Drs. Hull and Smith filed their joint report, and on January 25, 1966, after a hearing, the Court found Appellant incompetent to stand trial and ordered him committed to the Norman M. Beatty Memorial Hospital, Division of Maximum Security.

Three and one-half years later, June, 1969, Dr. Frank D. Hogle, Medical Director, Maximum Security Division, Beatty Memorial Hospital, certified that Appellant was competent to stand trial. On June 20, 1969, Appellant was informed by the Court of the nature of the proceedings against him. On August 7, 1969, Appellant filed a Motion for Psychiatric Examination. He was again examined by Drs. Hull and Smith who filed their joint report on September 4, 1969. On September 8, 1969, a bench trial commenced, and on October 28, 1969, the Court found the Appellant Guilty of First Degree Murder. A Motion for New Trial was overruled on December 31, 1971. On April 12, 1971, Appellant, pro se, filed a Petition for Post-Conviction Relief. On May 27, 1971, a hearing was held on this P.C. Petition and the Trial Court ordered a new trial ab initio.

Appellant took a change of venue to Hancock County and received appointment of counsel. On March 17, 1972, Appellant moved for a speedy trial. This motion was granted and on May 10, 1972, trial before a jury was commenced. On May 23, 1972, the jury returned the verdict of guilty of Second Degree Murder.

## II

We begin with a consideration of those issues revolving around Appellant's plea of insanity. Appellant suggests that

because the trial court did *not* conduct a hearing to determine his competency to stand trial he was denied due process of law. *Pate* v. *Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836. We agree with Appellant that *Pate, supra,* holds that the trial court must conduct a hearing to determine competency when a bona fide doubt as to a defendant's competency to stand trial arises. Our statute embodies the same concept:

*Commitment before trial—Subsequent actions.*—When at any time before the trial of any criminal cause or during the progress thereof and before the final submission of the cause to the court or jury trying the same, the court, either from his own knowledge or upon the suggestion of any person, has reasonable ground for believing the defendant to be insane, he shall immediately fix a time for a hearing to determine the question of the defendant's sanity and shall appoint two (2) competent disinterested physicians who shall examine the defendant upon the question of his sanity and testify concerning the same at the hearing. At the hearing, other evidence may be introduced to prove the defendant's sanity or insanity. If the court shall find that the defendant has comprehension sufficient to understand the nature of the criminal action against him and the proceedings thereon and to make his defense the trial shall not be delayed or continued on the ground of the alleged insanity of the defendant. If the court shall find that the defendant has not comprehension sufficient to understand the proceedings and make his defense, the trial shall be delayed or continued on the ground of the alleged insanity of the defendant. If the court shall find that the defendant has not comprehension sufficient to understand the proceedings and make his defense, the court shall order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution. Whenever the defendant shall become sane the superintendent of the state psychiatric hospital shall certify the fact to the proper court, who shall enter an order on his record directing the sheriff to return the defendant, or the court may enter such order in the first instance whenever he shall be sufficiently advised of the defendant's restoration to sanity. Upon the return to court of any defendant so committed he or she shall then be placed upon trial for the criminal offense the same as if no delay or postponement has [had] occurred by reason of defend-

ant's insanity. [Acts 1951, ch. 238, § 2, p. 682; 1961, ch. 151, § 2, p. 329; 1963, ch. 91, § 1, p. 58; 1967, ch. 291, § 2, p. 946.]

IC 1971, 35-5-3-2 [*Burns Ind. Ann. Stat.* § 9-1706 (a) (1973 Supp.)].

The question, then, becomes one of weighing the evidence. Was it an abuse of discretion for the trial judge to think that no "reasonable ground" to doubt defendant's competency had appeared? In making such an inquiry, we must remember that we are here concerned with *competency*, the ability to aid in one's defense, *Pate* v. *Robinson, supra,* which is not necessarily identical to or contemporaneous with that legal insanity which prevents the imputation of criminal responsibility. The trial was replete with testimony concerning the condition of Appellant's mind on October 12, 1965, the day of the shooting, but the only evidence relevant to the separate issue of competency is the following:

(1) Dr. Farnsworth, who treated Appellant at Beatty Memorial during the period 1966-1969 and who talked with Appellant for forty-five (45) minutes at trial (May, 1972), testified that Appellant had at the present time amnesia and could not remember events surrounding October 12, 1965. *Contra, Reagon* v. *State* (1961), 253 Ind. 143, 251 N.E.2d 829.

(2) Dr. Smith, who had examined Appellant in 1965, in 1969, and in March, 1972, on the other hand, gave the following opinion as to whether or not Appellant was at the time of trial suffering amnesia:

> "They told me at length about this prolonged amnesia, I think it was four years. I have never seen a case of amnesia last that long following shock treatment. He felt that it was due to the shock treatments which nearly always produces a degree of amnesia but four years is an all American record as far as I'm concerned. I never heard of it nor have I heard of anybody that has."

(3) The trial court had before it the following letter dated May 27, 1969, from the Medical Director of the Beatty Memorial Hospital Maximum Security Division:

> "Mr. Nathaniel Harris was admitted to Beatty Memorial Hospital, Maximum Security Division on January 26, 1966,

from the Marion County Criminal Court, Division II, the Honorable Saul I. Rabb presiding, as lacking sufficient comprehension to stand trial on a charge of First Degree Murder.

*Our psychiatric staff has recently evaluated Mr. Harris' condition and it is their findings that he is now competent to stand trial.* Furthermore, the staff felt that Mr. Harris is extremely susceptible to minimal stress which could cause a reoccurrence of mental illness which the Court should be aware of in its final disposition of Mr. Harris.

Please notify us in advance of the date your sheriff will plan to pick up Mr. Harris for return to your Court so that we can have his papers and his personal effects ready. Also please supply your sheriff with a Court Order for Mr. Harris' return to Court." (emphasis added)

In addition to these three items the trial judge observed the demeanor and behavior of Appellant at trial. We note that Appellant consented to an apparent waiver of a pre-trial competency hearing. Although we recognize that waiver is an inapposite concept in a competency situation, *Pate* v. *Robinson, supra,* the fact of actual attempted waiver is a circumstance bearing on the decision whether or not to hold a competency hearing. From the foregoing evidence, we conclude that the trial judge had sufficient evidence to find that the defendant had sufficient comprehension to stand trial.

Appellant contends that the duration of his commitment to Beatty Memorial Hospital, 1965-1969, violates the due process standard embodied in the following United States Supreme Court holding:

"We hold, consequently, that a person charged by the state with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the state must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other person, or release the defendant." *Jackson* v. *Indiana* (1972), 406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845, 1858.

Appellant's position is that four (4) years is presumptively more than a "reasonable period of time." We need not decide this question. Appellant misconstrued the situation. Appellant was not held four (4) years at Beatty Memorial in order to determine whether he would become competent in the foreseeable future, which is the rule of *Jackson, supra,* but in four (4) years time at Beatty he became competent to stand trial. *Jackson, supra,* involved a person incapable of becoming competent and is not applicable to Appellant's situation. In Appellant's situation, it is a reasonable inference that within a "reasonable period of time" it was determined that there was a "substantial probability" that Appellant would attain competency "in the foreseeable future" since, in fact, Appellant became competent in four (4) years. *Jackson, supra,* requires no more than this.

Appellant further alleges that because of the seven-year period from arrest to conviction he was denied his federal right to a speedy trial. *U.S. Const.* amend. VI. The United States Supreme Court has mandated that four factors be balanced to determine if the federal right to a speedy trial has been violated: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barger* v. *Wingo* (1972), 407 U.S. 514, 530, 33 L. Ed. 2d 101, 117, 92 S. Ct. 2182, 2192. The delay in this case was long but the reason was Appellant's incompetency—a fact not chargeable against the State. Appellant failed to assert his right until this appeal. Appellant lists three (3) ways in which the long delay prejudiced him: the death of a possible witness, the disappearance of tapes of Appellant's interrogation by police officer Davenport, and the unavailability at trial of a doctor who examined Appellant in 1966. However, the person who died was a man who witnessed the burglary arrest and could have testified as to Appellant's behavior (a circumstance pertinent to his insanity defense) at that time. Appellant's suggestion that the weight of this would-be cumulative testi-

mony is crucial because the other witnesses were police officers biased against an accused police-murderer is a matter solely for the jury. Secondly, Appellant does not allege that the missing tapes would have contradicted the testimony of the witness, Davenport. Lastly, Appellant offers no explanation as to why evidence from the doctor, personally unavailable for reasons of illness, could not have been otherwise submitted. In summary, we see no way in which Appellant was prejudiced by the delay.

Appellant's final contention on the issue of his mental condition is that because one of the physicians who testified was a member of the Indiana Board of Corrections the physician was not "disinterested" as required by statute. IC 1971, 35-5-2-2 [Burns Ind. Ann. Stat. § 9-1702 (1956 Repl.)]. The physician was apparently not a member of the Board of Corrections at the time he examined Appellant. However, we need not decide if this fact would make for substantial compliance with the statute for the reason that the doctor's testimony was favorable to Appellant (namely, that Appellant was insane at the time of the shooting) ; consequently, Appellant was not harmed by any technical deviation from the statute. *Johnson* v. *State* (1972), 257 Ind. 682, 278 N.E.2d 577, and cases cited therein.

Appellant raises two issues concerning the conduct of the trial. First, he alleges that he was prejudiced by an improper remark of the prosecutor during voir dire. The trial judge admonished the jury panel to disregard the remark and later inquired of the panel whether any one among them could no longer consider the case without regard to the prosecutor's remark. A prompt admonition is normally sufficient. *De Hority* v. *State* (1939), 215 Ind. 390, 19 N.E.2d 945. A trial court has wide discretion in determining if conduct by counsel was prejudicial. *Palmer* v. *State* (1972), 153 Ind. App. 835, 288 N.E.2d 739. The incident here in question does not approach the threshold of prose-

cutorial misconduct. *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312.

Second, Appellant has failed to show that he was prejudiced by the fact that a witness remained in the courtroom despite an order for separation of witnesses. Appellant concedes that the general rule is that the separation of witnesses is a matter within the discretion of the trial judge and a ruling will not be disturbed unless there is a clear abuse of discretion. *Maynard* v. *State* (1971), 257 Ind. 336, 274 N.E.2d 396; *Myslinki* v. *State* (1971), 257 Ind. 453, 275 N.E.2d 544. Appellant wishes us to hold that when a police officer is a prosecuting witness in a trial for the murder of a fellow police officer a violation of a separation of witnesses order is *per se* prejudicial. We see no valid reason for such a rule.

## IV

Appellant objected to a flight instruction on the ground that he had not been proved present at the scene of the crime. However, there was evidence allowing such an inference; therefore, the instruction was proper. *Greentree* v. *State* (1969), 253 Ind. 91, 251 N.E.2d 835; *State* v. *Torphy* (1940), 217 Ind. 383, 28 N.E.2d 70. Appellant argues that even if flight is admitted it must be for the crime charged and he *could* have been fleeing from the burglary charge. Such a choice between inferences is for the jury.

Appellant objected to the Court's refusal to grant tendered instructions Nos. 11 and 13. Appellant was not entitled to tender more than ten (10) instructions absent an order book entry of the trial court so permitting. "No party shall be entitled to predicate error upon the refusal of a trial court to give any tendered instruction in excess of the number fixed by this rule or the number fixed by the court order, whichever is greater." Rule CR. 8.

For all of the above reasons, the judgment of the trial court is hereby affirmed.

Givan, J., concurs; DeBruler, J. concurs in result; Prentice, J., dissents with opinion in which Hunter, J., concurs.

DISSENTING OPINION

PRENTICE, J.—I do not agree with the test applied by the majority opinion with respect to whether to hold a competency hearing. The issue before us on appeal is not whether there was "sufficient evidence [for the trial judge] to find that the defendant had sufficient comprehension to stand trial,"[1] but rather whether the trial court had before it "indicators sufficient to establish reasonable grounds to believe the defendant to be legally incompetent." *Evans* v. *State* (1973), 261 Ind. 148, 300 N.E.2d 882; *Tinsley* v. *State* (1973), 260 Ind. 577, 298 N.E.2d 429.

So long as the evidence before the court raises a "bona fide doubt" as to a defendant's competence to stand trial, the judge on his own motion must conduct a competency hearing pursuant to Burns Ind. Ann. Stat. § 9-1706a, IC 35-5-3-2. *Pate* v. *Robinson* (1966), 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815.

The trial judge, therefore, has much less discretion with respect to refusing to grant a competency hearing than he does in determining competency at a hearing. If this Court determines that there were sufficient indicators to establish a bona fide doubt as to defendant's competency, the failure to grant a competency hearing is error.

Furthermore, the statement in the majority opinion that "actual attempted waiver is a circumstance bearing on the decision whether or not to hold a competency hearing" is untenable in light of *Pate* v. *Robinson, supra.* An attempted waiver is a factor reflecting on defendant's demeanor at trial. And while "demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." 383 U.S. at 386, 15 L. Ed. 2d at 822.

We must therefore look to the facts presented to the trial

---

1. That would be the test if the defendant appealed from a determination of competency following a competency hearing.

court to determine if they could properly have been deemed dispositive on the issue of defendant's competence to stand trial in 1972.

Defendant's long history of mental problems was properly before the court, as was the 1966 determination that defendant was incompetent to stand trial. Standing alone, this evidence would mandate a trial judge to order a competency hearing at a later trial. However, a letter dated May 27, 1969, from the Medical Director of the Norman Beatty Hospital Maximum Security Division certified that Defendant was competent to stand trial *at that time*, but that he remained "extremely susceptible to mental stress which could cause a reoccurrence of mental illness." A trial in 1969 without another competency hearing would then be justified; but the certification of competency in 1969, in light of Defendant's history of mental illness, could hardly be deemed dispositive at a trial some three years later. A letter to the trial judge from Drs. E. Rogers Smith and Ronald H. Hull verified that Defendant was in a remission period of his illness in 1969, but indicated a high probability of recurrence of the mental condition, that he was fundamentally insane, dangerous, and should be retained in maximum security.

In addition to this evidence, the trial court had before it the testimony of four doctors at the 1972 trial. Drs. Smith and Hull testified as court-appointed physicians on the issue of Defendant's insanity at the time of the commission of the crime, but both made statements that they believed Defendant to be in a state of remission of his mental illness at the time of trial. They did not say how extensive this remission was, and said nothing about Defendant's ability at or immediately prior to trial to aid in the preparation of his defense.

Dr. Samuel A. Farnsworth testified that Defendant was suffering from amnesia at the time of trial and could not remember events relating to the commission of the crime.[2]

2. The fourth doctor testified for the State that he had never seen a case of amnesia following shock treatment last as long as Dr. Farnsworth

It would seem that this uncontroverted evidence of amnesia would be such an indicator of incompetence to stand trial as would compel a competency hearing at the 1972 trial, for there is a grave question whether a defendant suffering from amnesia could have "comprehension sufficient to understand the nature of the criminal action against him and the proceedings thereon and to make his defense" as required by Burns § 9-1706a.

With respect to the issue of amnesia, the majority cites *Reagon v. State* (1969), 253 Ind. 143, 251 N.E.2d 829. I do not believe that *Reagon* dispenses with the requirement to hold a competency hearing where uncontroverted evidence of amnesia is submitted to the trial court.

> "In consideration of the question before us we must draw a distinction between a mental condition of insanity, which is a valid defense to a criminal charge, and a mental incapacity, such as *amnesia, which may or may not prevent a defendant from aiding his counsel in making a valid defense.* In this connection the rule has been generalized to the following extent:
>
> " 'In determining a defendant's capacity to stand trial, the test is whether he has the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to co-operate with his counsel to the end that any available defense may be interposed * * *.' 21 Am. Jur. 2d *Criminal Law*, § 63, p. 144." *Reagon v. State,* 253 Ind. at 146. (Emphasis added.)

In *Reagon,* the defendant by his attorney had made a motion for a continuance, contending that his loss of memory precluded him from aiding his attorney in his defense. A hearing on the motion for continuance was held, and testimony was heard. The evidence adduced at this hearing was to the effect that the defendant comprehended and understood the proceedings against him and that he could reason and communicate with his attorney. This Court upheld the denial of the motion

---

testified that Defendant had been suffering from it. However, we do not believe that to be credible evidence that Defendant himself was not suffering from it.

for continuance on the basis of this testimony and also the certification of competency filed just two months before trial by the Superintendent of the State Hospital.

I do not think that the holding in *Reagon* dispenses with the hearing requirement where amnesia is alleged. The certification of competency in the case at bar was received about three years prior to the trial, and indicated that defendant was still extremely susceptible to minimal stress which could cause a reoccurrence of mental illness at any time. The testimony of Drs. Smith and Hull reveals that Defendant's mental illness was in a remission stage at the time of trial, but they did not refute the testimony of Dr. Farnsworth regarding amnesia. Moreover, there was no evidence introduced whereby it could be determined by the trial court that Defendant's form of amnesia could nevertheless allow him to fully aid counsel in making his defense at the time of trial. Furthermore, the fact that Defendant was currently in a remission stage of his illness does not necessarily mean that he would be able to aid in making his defense.

In light of the foregoing, I believe there were sufficient indicators before the trial court to raise a "bona fide doubt" as to the defendant's competence to stand trial. For this reason, I believe that it was error for the trial judge not to hold a hearing to determine the competency of Defendant at the time of trial, and to this extent, I dissent from the majority opinion.

Hunter, J., concurs.

NOTE.—Reported at 314 N.E.2d 45.