William E. RITCHIE, Appellant,

v.

STATE of Indiana, Appellee.

No. 1183S414.

Supreme Court of Indiana.

Oct. 16, 1984.

Frederick E. Rakestraw, Brown, Rakestraw & Kehoe, Rochester, for appellant.

Linley E. Pearson, Atty. Gen., Latr- ialle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant William E. Ritchie was found guilty, but mentally ill, of attempted rape, a Class B felony, by a jury in the Fulton Circuit Court on April 28, 1983. The Honorable Douglas B. Morton subsequently sentenced the appellant to a term of sixteen (16) years to the Indiana Department of Corrections. Appellant now directly appeals and raises the following two issues for our review:

1) error of the trial court in determining Defendant competent to stand trial; and

2) sufficiency of the evidence.

Appellant entered the apartment of sixty-five (65) year old R.W. late in the evening of August 21, 1982, through a window. R.W. caused Appellant to move backward from her bedroom door to the living room by threatening him with a stick. Appellant jerked the stick away from R.W. and also thwarted her attempt to call the police by grabbing the phone from her. He remained in R.W.'s apartment for more than an hour despite R.W.'s attempts to persuade him to leave. At one point, Appellant exposed himself and began masturbating. R.W. testified that during this time Appellant repeatedly said, "Let me come over and sit by you and I'll get this over with and I'll leave." R.W. threw water on the Appellant and he got up, pulled the shades down, turned the lights off and sat close to R.W. He placed his hand around R.W.'s neck and forced her up. R.W. jerked free from his grasp. When Appellant announced they were going into the bedroom, R.W. refused.

R.W. testified at trial that there was no point when she felt she could leave or get out of Appellant's sight until she actually did. When Appellant started for the back bedroom, R.W. made a dash for the door and successfully fled the premises. Although she testified Appellant did not attempt to rape her, she also said she refused to go into the bedroom because she didn't think anything good was going to happen in there.

Pursuant to Ind.Code § 35-5-3.1-1 (Burns Repl.1979) (now § 35-36-3-1) the trial court held a Comprehension Hearing to determine Appellant's competency to stand trial. Dr. Rutt and Dr. Musselman, both psychiatrists, were appointed by the trial court to interview Appellant. Dr. Evans was a psychiatrist who was called by Appellant to testify. Dr. Rutt specifically found Appellant had the ability to both understand the proceedings and to assist in his defense, hindered only by Appellant's lack of memory and possibly low intellectual ability. Dr. Musselman was of the opinion Appellant understood the proceedings, but he hesitated to say Appellant could assist in his defense. As indicated in the trial record, this hesitation was based solely upon Appellant's inability to recall events during the time span of the crime.

Dr. Evans' testimony was favorable to Appellant's contention that he was incompetent to stand trial. From the testimony of these doctors, the trial court found Appellant competent to stand trial.

### I

■ Appellant first asserts the trial court erred by determining Appellant was competent to stand trial. The test of competency to stand trial is whether defendant has sufficient present ability to consult his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him. *Mato v. State*, (1982) Ind., 429 N.E.2d 945.

Dr. Laurence K. Musselman, one of the court appointed psychiatrists who interviewed Defendant, testified at the comprehension hearing that in his opinion Defendant understood the proceedings and understood the charges pending against him, but felt it would be extremely difficult if not impossible for Defendant to adequately assist in preparation of his defense. The prosecuting attorney questioned Dr. Musselman as to why he held the opinion he did. Dr. Musselman responded that the primary basis for the opinion was, "Because of his (Defendant's) lack of understanding or his lack of memory of what occurred on the occasions of the events for which he is charged." Later Dr. Musselman testified that his opinion would differ if Defendant had recall of the night he entered R.W.'s apartment, and Dr. Musselman would then agree Defendant could adequately assist in preparation of his defense.

Dr. Carl Rutt, the other court appointed psychiatrist who interviewed Defendant, testified that in his opinion Defendant understood the nature of the legal proceedings against him. Dr. Rutt also testified that he believed Defendant had the requisite ability to assist in the preparation of his defense. Rutt added that though Defendant's impaired memory might hinder his ability to assist in his defense, Defendant could assist his attorney.

Dr. Evans, employed by the defendant, testified that Defendant's ability to understand the charges against him, to understand the Court's proceedings, and to assist his attorney in his defense was considerably impaired by a chronic severe mental disorder. As the State acknowledges, Dr. Evans' testimony entirely supported the contention Defendant was incompetent to stand trial.

■ In *Reagon v. State*, (1969) 253 Ind. 143, 251 N.E.2d 829, *cert. denied*, 397 U.S. 1042, 90 S.Ct. 1364, 25 L.Ed.2d 653, we held that where a defendant understood charges against him and was fully aware of events since a fatal automobile accident, which was the basis of charges against him, he was competent to stand trial, though he had lost recollection of the facts relative to the accident. It follows from *Reagon*, that Dr. Musselman's testimony favored the State's position that Defendant was competent to stand trial. Cross-examination of Dr. Musselman revealed he believed Defendant was incapable of assisting in his defense solely due to Defendant's loss of memory. *Reagon* makes clear that loss of memory is not a basis for determining a defendant is incapable of adequately assisting in his defense. Therefore, both Dr. Musselman's and Dr. Rutt's testimony, in essence, found Defendant competent to stand trial.

■ The trial court is vested with discretion to determine if reasonable grounds exist for believing that a defendant is competent to stand trial. The trial judge's decision will be disturbed only by a showing of clear abuse. *McDowell v. State*, (1983) Ind., 456 N.E.2d 713. Where there is conflicting medical evidence as to a defendant's competency to stand trial, the reviewing court will not overturn the determination of the trial court. *McMahan v. State*, (1978) 269 Ind. 566, 382 N.E.2d 154. The trial judge was presented with conflicting evidence as to Defendant's competency and clearly had reasonable grounds upon which to base a determination that Defendant was competent to stand trial. In view

of our finding that the trial court properly found Defendant competent to stand trial, this argument is without merit.

## II

■ Appellant next contends that the trial court erred in determining there was sufficient evidence to sustain the guilty verdict of attempted rape. As we have stated on numerous occasions, the standard by which we review this alleged error is we neither weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences therefrom which support the verdict. *Springer v. State*, (1984) Ind., 463 N.E.2d 243; *Kalady v. State*, (1984) Ind., 462 N.E.2d 1299; *Neice v. State*, (1981) Ind., 421 N.E.2d 1109, 1111. An attempt to commit a crime consists of the following two elements: (1) the accused acts with the required culpability, and (2) the accused engages in conduct constituting a substantial step toward commission of the crime. *Zickefoose v. State*, (1979) 270 Ind. 618, 388 N.E.2d 507.

Appellant entered the home of sixty-five (65) year old R.W. late in the evening of August 21, 1982, by way of a window. R.W. threatened Appellant with a stick and managed to move Appellant from the bedroom to the living room where he jerked the stick away from her. Appellant also grabbed the telephone from R.W. when she attempted to call the police. He then grasped her wrists and forced her backward. He remained in R.W.'s apartment for more than an hour despite R.W.'s requests to have him leave.

Appellant exposed himself and commenced masturbating. He told R.W. more than once, "let me come over and sit by you and I'll get this over with and I'll leave." After R.W. threw water on Appellant, he turned off the lights, pulled down the shade, and sat down beside R.W. He proceeded to force R.W. to stand up by locking her throat in his arm. When she jerked free, Appellant announced they were going into the bedroom. R.W. refused. She testified at trial that she thought nothing good was going to happen in there.

When Appellant approached the bedroom, R.W. managed to escape.

In *Pethtel v. State*, (1981) Ind.App., 427 N.E.2d 891, 896, *trans. denied*, the Court of Appeals relied upon the following quotation from *Hanes v. State*, (1900) 155 Ind. 112, 116, 57 N.E. 704, 705:

"Intent is a mental function, and, where not consummated, (and indeed even then), it is impossible to know with absolute certainty, what was operating in the actor's mind; and in such cases it must be arrived at by courts and juries from a consideration of the conduct and natural and usual sequence to which such conduct logically and reasonably points."

The natural and usual sequence to which conduct such as Appellant's in this case logically and reasonably points is rape; the jury reasonably concluded it was Appellant's intent to rape R.W.

■ In *Himes v. State*, (1980) 273 Ind. 416, 403 N.E.2d 1377, 1381, we considered whether the evidence proved a substantial step toward the commission of rape, and stated the following:

"Here, the defendant went beyond 'mere preparation' when he followed the women to their campsite and then returned with a gun. Where, as here, defendant's intent was established, his act of pointing the gun at McAvenue and directing her into the tent was sufficient to support the jury's finding that defendant took a substantial step toward carrying out that intent."

Appellant went far beyond mere preparation and took a substantial step toward the commission of rape by entering R.W.'s apartment through a window, using force upon and confining R.W. to the apartment, exposing himself and masturbating before R.W., and making sexual advances. This evidence clearly proved a substantial step toward the commission of rape. Therefore, sufficient evidence existed from which the jury could have rendered a guilty verdict, and Appellant has shown no error on this issue.

The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER and DeBRULER, JJ., concur.

PRENTICE, J., dissents with separate opinion.

PRENTICE, Justice, dissenting.

I dissent.

There was abundant evidence that the Defendant attempted to gratify a depraved sexual desire upon the person of R.W., by force and against her will. This was a crime for which he should have been convicted. That crime *probably was* attempted rape, but there was no evidence from which a reasonable man could conclude, beyond a reasonable doubt, that the crime *in fact was* rape. The evidence here fell short of that presented in *Himes v. State* cited by the majority.

There is no question but that there was adequate evidence of a criminal intent and that a substantial step was taken towards the commission of a crime. It is not enough, however, even under our standard of appellate review, that the conclusion that the crime was rape is reasonable and logical when it is just as reasonable and logical to conclude that it was not. Here, it is just as reasonable and logical to conclude that the Defendant sought to abuse R.W. in some manner other than rape, hence, it cannot reach the conclusion required beyond a reasonable doubt.

We have held that punitive damages should not be allowed upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness but only upon evidence that is inconsistent with the hypothesis that the tortious conduct was the result of noniniquitous conduct. *The Travelers Indemnity Company v. Armstrong*, (1982) Ind., 442 N.E.2d 349, 362. It is even more compelling that a criminal conviction not be sustained upon evidence that is merely consistent with an hypothesis of guilt. Some evidence must be had that is inconsistent with an hypothesis of innocence. Otherwise a reasonable doubt cannot be denied.

Either the State overcharged or mischarged the Defendant or failed to present evidence, which may have been available, relative to the crime charged. The judgment should be reversed.