Frank Lee JONES, Appellant,

v.

STATE of Indiana, Appellee.

No. 784S276.

Supreme Court of Indiana.

Jan. 21, 1985.

Paul James Newman, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Frank Lee Jones was found guilty of Robbery, a class A felony, by a jury in the St. Joseph Superior Court on January 11, 1984. The Honorable Jeanne J. Swartz subsequently sentenced the appellant to a term of thirty (30) years to the Indiana Department of Corrections. Appellant now directly appeals and raises the following three issues for our review:

1. error of the trial court by permitting testimony about money taken in the robbery;

2. error of the trial court by permitting two witnesses to testify about bodily injury caused during the robbery; and

3. sufficiency of the evidence.

On December 23, 1981 around 12:12 p.m., three black males entered Sobieski Federal Savings and Loan in South Bend, Indiana. They told the people there not to move and eventually made them all lie on the floor. Two of the robbers brandished guns. One wore a green army jacket, black "tammy" hat, white scarf, gloves, and a nylon stocking over his face. The second armed robber wore a green army jacket, dark pants, dark skull cap, gloves, and a nylon stocking mask. He sat on a chair in the lobby to watch the doors. The third robber was unarmed and wore a hooded green parka, blue jeans, white tennis shoes, gloves, and a nylon stocking over his face. He removed the money from the drawers at the tellers' stations.

During the robbery, the robber sitting in the lobby announced that someone was coming into the bank. The other armed robber ran to the door, grabbed the entering man by the arm and threw him to the floor. Moments later the robbers fled and the bank manager called the police. The manager noticed the man who had been thrown to the floor, Joseph Odynski, holding his arm, appearing to be in pain, and saying he had no feeling in his arm. Odynski's wife, who saw the robbers flee, went into the bank to check on her husband. She found him on the floor, holding his right shoulder. He told his wife he was in pain and said he had been grabbed by the jacket, swung around, and slammed to the floor. An ambulance took Mr. Odynski to the hospital where he underwent surgery. A pin was placed in his arm and he wore it in a sling for about one month.

When the police arrived at the bank, the manager informed Officer Glon that two of the three black males had run across the street and down the alley while the third had run down the street. The police found two sets of footprints in the alley leading to the rear of a house at 1805 West Sample Street. No other footprints were observed during the tracking and the police never lost sight of the tracks. The house at 1805 West Sample Street was immediately put under surveillance. Several police units arrived and the police entered the house. Appellant was one of the persons observed in the house. The police subsequently left the interior of the house but surveillance was continued from the outside.

Around 2:30 p.m., a car pulled up to the house. Two people, a black female carrying a large brown paper bag, and a black male, similar in description to one of the robbers, came out of the house and got into the car. The female was sitting in front and the male in the rear as the car drove away. Undercover police followed the car and were instructed to get uniform units and stop the car. The car transporting the appellant did not have a rear license plate. Upon stopping the car, each passenger was asked for identification. Appellant could not produce any but gave a social security number which was not his true social security number. While checking the social security number, police observed Appellant moving around in the rear seat and asked him to step out of the car. Appellant agreed to go to the police station to be identified. The police told him they were going to first pat him down for weapons. Appellant fully cooperated.

During the pat down, the officer felt a bulge in the right hand pocket of Appellant's coat. The officer put his hand in the right pocket and removed cash. When the officer realized he had not discovered a weapon, he returned the cash to Appellant's pocket. After the pat down, one of the officers observed the handle of a gun in the back seat of the car. Upon investigation, the officer discovered a gun in the area where Appellant had been sitting and had been observed fidgeting. Appellant was taken to the police station and advised that he was a suspect in the robbery of Sobieski Federal Savings and Loan. Appellant was advised of his constitutional rights

and a warning and waiver form was read to him. Appellant signed the warning and waiver form and indicated he understood his rights. Then he emptied his pockets per police request and the contents included a large amount of money. At first Appellant claimed the money was obtained through gambling. Later, Appellant claimed he did not know where he got the money. Part of the money was "bait money" which could be and was clearly identified as money stolen from Sobieski's Federal Savings and Loan. Police then searched the house at 1805 West Sample Street pursuant to a search warrant. Clothing similar to that worn by the robbers was found in various places, including the dishwasher.

## I

Appellant contends the trial court erred by denying his Motion to Suppress, and admitting testimony regarding money seized from the appellant and State's exhibits of this money over Appellant's objections. Appellant sought the suppression of all evidence obtained by the South Bend Police Department by his Motion to Suppress. Appellant argues that the stop of the car in which he was a passenger and the patting down of his person leading to the discovery of the money constituted an illegal search and violated his Fourth Amendment rights. Accordingly, Appellant urges that all incidents occurring thereafter were tainted and all subsequently obtained evidence was inadmissible due to the illegal search.

To justify a warrantless intrusion, a police officer need not have probable cause to make an arrest but must point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant an intrusion upon an individual's right of privacy. *Terry v. Ohio*, (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Rutledge v. State*, (1981) Ind., 426 N.E.2d 638. The police knew a robbery had occurred and the police trailed the robbers to a house at 1805 West Sample. The police knew the robbers were three black males and had a general de-

scription of them and what they had been wearing. When a black male fitting the description of one of the robbers exited the house and got into a car, the car was followed. Police stopped the car because it had no rear license plate and because Appellant was a possible suspect in the robbery. These are sufficient facts and reasonable inferences could be drawn from them to warrant the police to stop the car. *Rutledge, supra, Morgan v. State*, (1981) Ind.App., 427 N.E.2d 14.

Furthermore, a brief stop of a suspicious individual in order to determine his identity or to maintain the *status quo* momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time. *Adams v. Williams*, (1972) 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617; *Spikes v. State*, (1984) Ind., 460 N.E.2d 954, 956, *reh. denied*. When Appellant was stopped he could not produce any identification as requested. Furthermore, a social security number he gave for the purpose of identification belonged to another person. Police at this point were still trying to determine if Appellant was one of the suspected robbers and needed Appellant's true identification. So the police asked Appellant, and Appellant agreed, to go down to the police station for identification purposes. Appellant was told that he would be subject to a pat down and Appellant fully cooperated. Appellant was wearing a big thick coat, so when the police felt something large and bulky in the coat pocket, the officer put his hand inside and pulled out a roll of money. The money was immediately returned to Appellant's pocket when the police realized it was not a weapon. We do not find this frisk to have been unreasonable. The police may search a person prior to questioning to remove any weapons the person can use to harm the officer or effect an escape. *Townsend v. State*, (1984) Ind., 460 N.E.2d 139. When the police felt something bulky and somewhat hard inside the thick coat, they could reasonably investigate to determine whether the appellant possessed a weapon of any

kind. Furthermore, after the officer put the money back into Appellant's pocket, he looked inside the back window of the stopped car and saw the grip of a handgun. The officer then went inside the vehicle, pushed the seat out and saw a .38 Charter Arm Special handgun. At trial the officer testified that the gun was situated where Appellant had been observed squirming. At this point in the stop probable cause existed to make an arrest of Appellant, but because Appellant voluntarily agreed to go to the police station, an arrest was not necessary. The discovery of the handgun was used at trial not as proof of the robbery weapon, but rather to show the surrounding circumstances which gave rise to the legitimacy of police action. Since the action by the police was not an unreasonable search and the stop of the suspect car was justifiable, the trial court did not err by denying Appellant's Motion to Suppress and admitting evidence of the money subsequently found on Appellant.

## II

■ Appellant claims the trial court erred by permitting two different witnesses to testify about bodily injury sustained by Joseph Odynski during the robbery. Joseph Odynski was thrown to the floor by one of the robbers and taken to the hospital after the robbery for surgery on his arm. He died before the time of the trial from independent causes. Florence Odynski testified over Appellant's objection of hearsay as to statements made by her husband immediately following the robbery. When Florence Odynski saw the robbers exit the bank she fled to her husband. He was lying on the floor and told her he had been swung around by one of the robbers and slammed to the floor. Further, Gerald Gadacz also testified over Appellant's hearsay objection about statements made by Joseph Odynski concerning injuries the latter sustained during the robbery. Appellant contends that since both incidents involved hearsay and were being used to prove the robbery resulted in bodily injury, this testimony should have been excluded. However, we find Appellant's contentions without merit because, as the State points out, the testimony of Mrs. Odynski and Mr. Gadacz was admissible under the theory of *res gestae.*

Happenings near in time and place which complete the story of the crime are admissible under the theory of *res gestae,* even though such testimony might be otherwise objectionable. *Blankenship v. State,* (1984) Ind., 462 N.E.2d 1311; *Brown v. State,* (1981) 275 Ind. 441, 417 N.E.2d 333. Furthermore, admission of evidence under the theory of *res gestae* is within the sound discretion of the trial court. *Blankenship, supra; Spears v. State,* (1980) 272 Ind. 634, 401 N.E.2d 331, *reh. granted* (1980) 272 Ind. 647, 403 N.E.2d 828. Under the circumstances of this case, we find no abuse of discretion in allowing the testimony of both witnesses which was relevant and directly related to the charged offense. The occurrences about which the witnesses testified happened during and as a result of the robbery. Both of the witnesses were on the scene and in Joseph Odynski's presence within minutes of the robbers' flight. The happenings about which the witnesses testified happened concurrently with the robbery and complete the story of the crime. Thus they were admissible under the theory of *res gestae* and the trial court did not abuse its discretion by admitting this testimony. Consequently, we find no error presented by this issue.

## III

■ Appellant contends the trial court erred by denying his Motion for Judgment on the Evidence because the evidence was insufficient to prove the identity of Appellant as one of the robbers and insufficient on the element of bodily injury. The standard of review for a denial of a Motion for Judgment on the Evidence and for a challenge of insufficiency of the evidence is the same. As stated on numerous occasions, the standard by which we review the alleged error of insufficient evidence is we neither weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences there-

from which support the verdict. *Ritchie v. State*, (1984) Ind., 468 N.E.2d 1369; *Springer v. State*, (1984) Ind., 463 N.E.2d 243.

First Appellant contends there was no evidence which identifies him or connects him with the robbery. However, it is undisputed that the robbery was perpetrated by three black males wearing nylon stocking masks, green coats, gloves, hats and other identified clothing. Also, two sets of footprints led from Sobieski Savings and Loan directly to a house at 1805 West Sample Street. The footprints were in the vicinity of the area where the robbers had last been seen. Police followed the footprints, arrived at the house a short time after the robbery, kept the house under surveillance, and entered the house shortly thereafter. Appellant was present when the police entered. About one and one-half hours later Appellant, who was similar in description to one of the robbers, left the house with a female. The car in which they were passengers was stopped, and when asked for identification, Appellant could not produce any. Appellant did, however, give a false social security number to the police. During the pat down, police investigated a large bulge in Appellant's coat pocket which turned out to be a wad of money. Later at the police station, Appellant emptied his pockets and once again the large amount of money was revealed. Some of Appellant's money matched a list of "bait money" taken in the robbery. Police discovered clothing similar to that worn by the robbers in a subsequent search of the house at 1805 West Sample. The clothing was found in a washer in the basement and in the dishwasher in the kitchen.

If the evidence only inconclusively connects the defendant with the crime, this goes to the weight, not the admissibility of the evidence. The identity of an accused is a question of fact, not law. Therefore, the weight to be given identification evidence and any determination of whether it is satisfactory and trustworthy is a function of the trier of facts. *Williams v. State*, (1983) Ind., 455 N.E.2d 299; *Armstrong v. State*, (1982) Ind., 429 N.E.2d 647. The trier of fact determined that the evidence was sufficient to identify the appellant as one of the robbers. We think the evidence in this case, though circumstantial, was sufficient to like the appellant to the robbery.

Appellant also alleges the evidence is insufficient on the element of bodily injury to support the conviction. We have already ruled that evidence concerning Joseph Odynski's injury was admissible. This evidence showed that Joseph Odynski was thrown to the floor by one of the robbers. As a result Odynski complained of pain and numbness in his arm. He was taken to the hospital where surgery was performed. Clearly this evidence is sufficient to imply that Odynski suffered serious bodily injury as a result of being thrown to the floor during the robbery. Therefore, the evidence as to identity and bodily injury is sufficient and no error has been presented on this issue.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.