Robert F. **RESNECK**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 1085S438.

Supreme Court of Indiana.

Nov. 5, 1986.

Jane Schliesman, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Robert F. Resneck was found guilty, but mentally ill, of attempted murder by a jury in the Monroe Circuit Court. He subsequently was sentenced by the trial judge to a term of twenty (20) years. Appellant now raises three issues for our consideration on this direct appeal:

1. permitting one of the expert medical witnesses to testify;

2. the finding of guilty but mentally ill; and

3. the finding that Appellant was competent to stand trial.

The facts show that Appellant Robert Resneck and the victim, Ron Hall, were friends. Both of them were homosexuals and had engaged in sexual acts. Hall admitted to being a practicing homosexual, but Resneck, who admitted to some homosexual activity, tended to deny that he was homosexual. He showed some resentment toward homosexuals and towards the homosexual alliance in Bloomington, an organization he viewed as being hostile to him. On March 12, 1983, Resneck went to Hall's residence to watch television with him for a while. He then left rather abruptly but returned in fifteen minutes and shot Hall in the face. Resneck had purchased the pistol he used in the shooting a few days before. Hall was hospitalized for a day and a half but recovered from the shooting. After the shooting, Resneck left the place quickly and went to the homes of several acquaintances, attempting to talk to them. Being unsuccessful in that regard, he went to a local bar and drank by himself for a period of time.

I

Resneck interposed the insanity defense and the court appointed three medical experts to examine him and testify as to his sanity at the time he committed this crime. Resneck now objects to the court's appointment of Dr. Jerry Neff, claiming that Dr. Neff was not a disinterested witness. No objection was made by anyone to Dr. Neff's testimony during the competency hearing. Resneck further claims he received ineffective assistance of counsel since his trial counsel belonged to the law firm which was counsel for the South Central Community Health Center in Bloomington, and Dr. Neff was employed by that Center. He claims his attorney therefore had a conflict of interest that rendered his representation ineffective.

█ Dr. Neff was the Medical Director of the Mental Health Center. He testified he was responsible for the treatment of patients in the inpatient psychiatric unit of the hospital. He was also the general supervisor of treatment for outpatient evaluation and prescriptions. Resneck had never been an inpatient at the Mental Health

Center, had never been examined or evaluated by a doctor of the hospital, and had never received treatment of any kind from any of its personnel. Resneck did attend a voluntary group therapy program conducted by the Center for a period of up to a year, beginning in early 1982. These group sessions were conducted by a psychologist and social therapist. Although those conducting the sessions encouraged the participants to attend the sessions, attendance was purely voluntary. An attempt was made to induce the group to discuss their problems with each other in an effort to identify and resolve their particular problems. Testimony indicated that Resneck's attendance at the sessions was erratic in that he did not attend regularly and finally drifted away on his own.

Dr. Neff never treated Resneck until he was appointed in this case, along with other psychiatrists, to determine whether Resneck was competent to stand trial. At that time, he examined the records made by those conducting the group therapy sessions, as well as other records, and conducted his own personal examination of Resneck. His finding at that time was that Resneck was not competent to stand trial.

During the trial Neff was called again, along with other psychiatrists, to testify as to Resneck's sanity at the time he committed this crime. Although two other psychiatrists found that Resneck was insane when he committed this crime, it was Dr. Neff's opinion that Resneck was not insane. Resneck now claims Dr. Neff's testimony as to Resneck's sanity at the time of the commission of the crime is suspect and that Dr. Neff's appointment by the court was improper.

The only grounds given suggesting Dr. Neff's interest in the outcome of Resneck's trial, is Resneck's claim, made for the first time in his Motion to Correct Error, that Dr. Neff may have been concerned that the Mental Health Center would be subject to a malpractice suit as a result of Resneck's commission of this crime following his treatment at the Center. It is the State's position that Resneck's claim that Dr. Neff's testimony may have been influenced by his fear of a potential malpractice suit is highly speculative and totally born of Resneck's post-trial presumptions. There is nothing in the record to indicate or even suggest a malpractice action was considered by Dr. Neff or any of the officials at the treatment center. Resneck's only support for his contention is the fact that Dr. Neff found Resneck incompetent to stand trial in his initial examination, and later found Resneck was not insane at the time he committed the crime, even though two other psychiatrists found Resneck insane. Resneck further claims Dr. Neff's conclusions tended to disagree with findings of one of the psychologists who worked with Resneck in the voluntary group counseling program at the Mental Health Center. This psychologist noted that Resneck showed some tendencies toward suicide and homicide because of indications of violence in the past. Dr. Neff's analysis, however, in his testimony before the jury, was given in a forthright and analytical manner that distinguished the findings of those who disagreed with him. Dr. Neff also was able to show that his conclusions about Resneck's mental condition concerning sanity were not in conflict with those given earlier in which Dr. Neff found Resneck incompetent to stand trial. Resneck claims that his trial counsel and Dr. Neff sought to avoid questions about negligent treatment or other failures by downplaying the indicia that Resneck suffered from paranoid schizophrenia. Since these factors indicated Resneck's lack of awareness and control of his contact with reality, they were highly relevant to Resneck's sanity, and also tended to show how he should have been treated by Dr. Neff and his staff at the Center. Resneck then states in his brief that whether this was done on advice of counsel is too speculative to explore. We agree.

Although we would not wish to attempt to make findings or decide the outcome of an alleged civil suit that might be filed, it does appear that such a prospect is nothing more than speculation at this point and could not be considered as a factor that

might have entered anyone's mind at the time of Dr. Neff's selection and testimony. There is no showing that Resneck ever was a patient under the control, treatment, or supervision of the Center. He was never seen by one of the doctors and never received treatment by them. He was not committed to or confined in any way as an inpatient. His contact with the group therapy program was strictly voluntary and contemplated no treatment or confinement.

Further, the acts of violence shown by Resneck on previous occasions were generally known to others concerned, and therefore did not require or demonstrate a need to notify anyone. One of the subjects of Resneck's violence was also a participant in the voluntary treatment program. The incident involved a personal conflict between Resneck and the other participant at the participant's residence. The participant there called the police and when Resneck was taken into custody, the participant stated he did not wish to press charges, and asked that Resneck be released.

Another incident involved a professor at Indiana University with whom Resneck had some conflict. This also was reported to the police and was known generally by the police, and everyone else who might have an interest. The inference that the Center had knowledge of some violence demonstrated by Resneck that required their giving notice to potential victims, seems to have little merit, inasmuch as others had as much notice of Resneck's violent tendencies as the Center. Further, the Center had no relationship with Resneck that put them in a position to control him in any event.

Additionally, we know of no basis for finding that a doctor is disqualified from examining and testifying as to the sanity of a criminal defendant simply because that doctor is on the staff of an institution in which that defendant was at one time treated, even where that doctor had taken part in some of the treatment. It is not unusual to have staff members of such institutions testify as to their diagnosis and analysis of the mental condition of the defendant where knowledge has been gained in that manner. Dr. Neff was named by the court here and his appointment was mailed to him at his office at the Center. Dr. Neff testified at the competency hearing and openly stated his relationship with the institution as well as his knowledge that Resneck had taken part in the group therapy program. Neither Resneck, his family, nor either of his two attorneys objected in any manner to Dr. Neff's qualifications. The same is true of Dr. Neff's testimony with regard to Resneck's mental condition at the time of the commission of the crime. Neither Resneck, his family, nor either of his attorneys made any objection to Dr. Neff's appearance and testimony. We therefore fail to see that any reversible error is presented in this regard.

■ Appellant Resneck had two attorneys representing him throughout this cause, including the trial. Attorney Galvin was appointed by the court to represent Resneck and took part in the entire trial of the cause. Resneck's family also hired Attorney Chapman to act as co-counsel in defending Resneck. Attorney Chapman was paid by Resneck's family. Resneck now claims that Chapman did not sufficiently notify him that Chapman's firm was counsel for the Community Health Center and therefore had a conflict of interest that prevented Chapman from effectively representing Resneck. He therefore claims ineffective representation that merits reversal of his conviction.

As we already have stated, Resneck and his family were present during Dr. Neff's testimony and raised no question during the trial. This issue was first raised in a Motion to Correct Error. Even at this point, Resneck has not complied with Ind. T.R. 59(H)(1) which requires evidence outside the record on a motion to correct error to be brought into the record by way of affidavits. Resneck has filed no affidavit to the effect that he was not advised by Chapman of the now alleged potential or actual conflict of interest between Chapman and Dr. Neff. Resneck and his family admit that Attorney Chapman advised

them in their very first interview, that his law firm represented the Mental Health Center but that Chapman did not personally take part in any of Health Center's matters nor was he aware of them. The parties discussed this relationship and found there was no conflict that gave them concern, thereafter entering into an agreement of representation by Attorney Chapman. Resneck does not deny he was so advised but claims Chapman did not sufficiently explain to him the prejudice that could come to his defense if a conflict should arise during the trial.

Again, the only ground given for showing a potential or possible conflict which would support Resneck's claim of ineffectiveness of counsel, is the claim that Chapman's firm and the Mental Health Center could have contemplated a possible malpractice suit if Resneck was, in fact, found to be not guilty by reason of insanity. Resneck thus reasons that if such was the case, the Center and its counsel would be advantaged to have Resneck found sane at the time he committed the crime so that any grounds of negligence against the Center would be less likely. Again Resneck gives no support for these contentions other than his own speculation. Although he attempts to show that cross-examination by Attorney Chapman of Dr. Neff was not as detailed as it might have been, the record does not bear him out.

First, the examination of an expert witness is one of trial strategy. Second, Dr. Neff's testimony was as detailed and subject to as much cross-examination as any of the other medical witnesses. It is not unusual for an experienced trial lawyer to refrain from detailed and lengthy cross-examination of a witness testifying against his client unless there is some assurance his client's case will profit from it. Furthermore, Resneck does not mention in his brief the fact that his court appointed attorney was present at all times, took part in this trial and was willing to handle Dr. Neff in the same manner that Attorney Chapman did. Neither did the court appointed attorney object at any time to Dr. Neff's qualifications or interest. An exam-

ination of the transcript of this trial indicates that Attorney Chapman very ably represented Resneck in a highly competent manner. Under the facts and circumstances here, we see no showing that there was a conflict of interest that prevented Attorney Chapman from ably representing Resneck. No facts whatever are shown to indicate or infer that Chapman and the Center speculated about a potential malpractice action. Neither has Appellant shown that there is any apparent conflict between Dr. Neff in his position with the Center and any opinion he might have as to the mental condition of Resneck at the time he committed this crime.

The standard for reviewing a claim of ineffective assistance of counsel is a two-step analysis articulated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and applied in this State in *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291. The first step is to show that counsel's performance fell outside the range of competent professional assistance. If that step is satisfied, the defendant must then establish a second part, the prejudice component. Prejudice would, of course, be presumed, whenever an actual conflict of interest is shown. *Lawrence* at 1294. The record shows that counsel's performance here did not fall outside the range of competent professional assistance. In fact, it shows counsel acted very competently. We further fail to see any showing of a conflict here which resulted in such prejudice to Resneck that it amounted to ineffective assistance. We therefore find no error on this issue.

## II

Next, Resneck claims the statute providing for the verdict of guilty but mentally ill allows jurors to treat legally insane defendants as merely mentally ill thereby denying him due process and equal protection rights to the insanity defense. He further claims that the verdict of guilty but mentally ill is contrary to the law in that all

of the evidence except Dr. Neff's leads solely to the conclusion that Resneck was not guilty by reason of insanity. These precise issues were raised and decided adverse to Appellant's position in *Taylor v. State* (1982), Ind., 440 N.E.2d 1109. In *Taylor,* this Court found that Ind.Code § 35–5–2–3 (Burns, 1981) recognized that while a particular defendant may have been mentally ill at the time he committed an offense, the fact that his thoughts, feelings, or behavior were affected, or his functions impaired, such does not automatically negate the *mens rea* necessary to the offense. *Id.* at 1112. If, on the other hand, the defendant was suffering from insanity as defined in Ind.Code § 35–41–3–6 (Burns, 1979), then he has established his affirmative defense and the lack of moral culpability which otherwise would justify the imposition of criminal liability. *Id.* We then found that the statutory definitions and alternative verdicts presented by the statutes are equally available to all persons similarly situated, that factfinders will be able to make a determination of mental illness or insanity in a reasonable manner and that the classification is not so irrational as to amount to a denial of equal protection and privileges and immunities to defendant. *Id., See also Green v. State* (1984), Ind., 469 N.E.2d 1169; *Ward v. State* (1982), Ind., 438 N.E.2d 750.

Resneck further asks us to find that the jury's verdict was contrary to law because all the evidence pointed to the fact that he was insane at the time he committed this crime. He essentially invites this Court to reweigh the evidence, judge the credibility of witnesses, and make our own determination of a proper verdict. When a defendant enters a plea of not guilty by reason of insanity, he bears the burden of proof on the issue. *Turner v. State* (1981), Ind., 428 N.E.2d 1244, 1246; *Basham v. State* (1981), Ind., 422 N.E.2d 1206, 1209; Ind.Code § 35–41–4–1 (Burns, 1975). It is, therefore, only where the evidence is without conflict and leads to but one conclusion and the trier of fact has reached an opposite conclusion, will the finding be disturbed as being contrary to law. *Turner,*

*supra; Walker v. State* (1978), 267 Ind. 649, 651, 372 N.E.2d 739, 740. Furthermore, the function of the expert witness in a case involving a sanity question is advisory in nature, since he does not state facts but gives an opinion in order to aid the jury. *Church v. State* (1984), Ind., 471 N.E.2d 306, 309. Here, the jury heard the testimony of psychiatrists who disagreed in their conclusions, lay witnesses who gave an account of Resneck's mental condition, and the testimony of Resneck, himself, who recounted his actions and mental processes as he committed this crime. The jury therefore had adequate and sufficient evidence before it from which to make its judgment on Resneck's sanity and we will not disturb that finding.

## III

Finally, Resneck claims the court abused its discretion in finding him competent to stand trial. The test of competency to stand trial is whether the defendant has sufficient present ability to consult his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *Mato v. State* (1982), Ind., 429 N.E.2d 945, 964. Here, the court heard conflicting evidence on the subject. Drs. Crane and Edger had the opinion that Resneck was competent to stand trial. Drs. Neff, Davis, and Bintasan were of the opinion Resneck was not competent to stand trial. We consistently have held that the trial court is vested with the discretion to determine if reasonable grounds exist for believing that a defendant is competent to stand trial. The trial judge's decision would be disturbed only by a showing of clear abuse. *Ritchie v. State* (1984), Ind., 468 N.E.2d 1369, 1371; *McDowell v. State* (1983), Ind., 456 N.E.2d 713, 716. An examination of the testimony here reveals the trial judge was presented with conflicting evidence as to Resneck's competency and had reasonable grounds upon which to base a determination that he was,

in fact, competent to stand trial. No error is presented on this issue.

We affirm the trial court.

GIVAN, C.J., and DeBRULER, SHEPARD and DICKSON, JJ., concur.