**Joy Lynn DARBY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 48S00–8601–CR–73.**

Supreme Court of Indiana.

Nov. 6, 1987.

William D. McCarty, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Joy Lynn Darby directly appeals from a verdict of guilty, but mentally ill, of Voluntary Manslaughter, class B felony, as an included offense of the charged crime of Murder. She was sentenced to twenty (20) years imprisonment. We address seven (7) consolidated issues, including:

1. competency to stand trial;

2. admissibility of evidence obtained from a warrantless seizure of Darby's automobile;

3. *sua sponte* resubmission of Darby's service revolver for jury inspection;

4. allowing testimony allegedly beyond the proper scope of a rebuttal case;

5. propriety of a jury instruction concerning the lack of a requirement to find malice or premeditation;

6. propriety of a jury instruction on presumption of sanity; and

7. sentencing.

The facts show that Joy Darby killed Roger Nodine. Darby was a hospital employee and a Henry County Reserve Deputy. Nodine was a member of the Madison County Sheriff's Department. They had been dating. Darby became pregnant and had an abortion. After the abortion, Nodine started to date others. Darby was upset over the deterioration of the relationship.

On November 5, 1984, Darby went to see Nodine at about 5:20 a.m. Nodine was in his trailer with another woman. As Darby pulled into the driveway, she saw an unfamiliar car and decided to talk to Nodine away from the trailer. She parked her car and went back to Nodine's trailer. She told him she had car trouble and asked his help. They sat in her car and talked about their relationship. Darby was very upset because although she had agreed Roger could see others, she had not known he was having anyone over all night. Darby told police that at that point "she lost it" and admitted shooting Nodine. Ballistics tests confirmed Nodine was shot with Darby's service revolver.

Clifford Randolph heard loud voices and drove down his long driveway to investigate. He saw Nodine lying on the ground in front of one car. Nodine had been shot but was able to speak. Darby had her hand under her jacket as if she had been shot. Darby ran up to Randolph, said she had been shot, and asked him to call an ambulance. Randolph drove next door to use the telephone and within 30 seconds, heard another shot from the direction of the cars. Randolph called the police and gave a description of Darby. Nodine was pronounced dead at the hospital. He received six (6) gunshot wounds, any one of which could have been fatal.

Investigators located Darby at her grandmother's house. Darby gave officers her service revolver and a .25 caliber pistol, and agreed to go to the police station. Deputy Carl Sells observed Darby's automobile parked outside and noticed a reddish substance that appeared to be blood on the right side, down the right fender, and along the entire passenger side. Officer Samuel Hanna read Darby her *Miranda* rights and asked her about the red marks. Darby said she didn't know anything about them, but later, said the blood was from an animal she had hit a week or more earlier. Hanna told Darby he had to tow the car to find out about the blood. Darby said that would be fine. Later on, when Hanna talked to her and mentioned towing her car, she said it was done with her permission.

Deputy Dale Stegner watched the car until it was towed. Before it was towed,

State Trooper George Boaz lifted some of the reddish substance from the car because he was afraid it might be lost when transporting the car to the jail. No warrant had been obtained to search the car. The car was taken to the garage of the Henry County Jail. When a search warrant for the vehicle arrived that afternoon, a state trooper recovered another sample of the same substance. The substance taken from the automobile was human blood of a type consistent with the blood that had soaked Nodine's shirt.

Darby developed amnesia concerning the shooting and recalled nothing about it.

### I.

Darby first asserts the court abused its discretion in finding her competent to stand trial. The test of competency to stand trial is whether the defendant has sufficient present ability to consult her lawyer with a reasonable degree of rational understanding and whether she has a rational as well as factual understanding of the proceedings against her. *Resneck v. State* (1986), Ind., 499 N.E.2d 230, 235; *Mato v. State* (1982), Ind., 429 N.E.2d 945, 946.

Darby claims her amnesia precluded the possibility of her conferring with counsel concerning the immediate facts of the shooting and thus, it was impossible for her to present a realistic defense. She argues her form of amnesia normally goes away fairly rapidly. Thus, a finding of incompetency to stand trial would only have delayed her trial until she was able to aid her attorneys and would not have prejudiced the State.

The examinations of Darby made pursuant to her claim of legal insanity showed she suffered psychogenic amnesia concerning the immediate events of the shooting. No evidence of malingering was found. Clinical psychologist George Lewis and psychiatrist Gregory V. Richardson, M.D. testified concerning Darby's inability to recall events during the time span of the crime. Psychologist Robert W. Jeffries concluded Darby did not meet the criteria for insanity. Psychiatrist Marc Weinbaum, M.D. concluded Darby was sane at the time of the crime.

Loss of memory is not a basis for determining a defendant is incapable of adequately assisting in her defense. *Ritchie v. State* (1984), Ind., 468 N.E.2d 1369, 1371; *Reagon v. State,* (1969), 253 Ind. 143, 146–47, 251 N.E.2d 829, 830–31, *cert. denied,* 397 U.S. 1042, 90 S.Ct. 1364, 25 L.Ed.2d 653. The trial court is vested with the discretion to determine if reasonable grounds exist for believing a defendant is competent to stand trial. The trial judge's decision will be disturbed only on a showing of clear abuse. *Resneck,* 499 N.E.2d at 235; *Ritchie,* 468 N.E.2d at 1371. The trial judge was presented with evidence of Darby's competency and, significantly, no evidence that she was unable to consult with her lawyer with a reasonable degree of rational understanding or lacked a rational or factual understanding of the proceedings against her. Thus, the trial court had reasonable grounds to determine Darby was competent to stand trial.

### II.

Darby next claims an illegal search and seizure of her automobile required exclusion of evidence. Darby's automobile yielded blood stains, cartridge cases, tire casts, and fabric from the victim's clothing found underneath the car. Darby moved to suppress all evidence obtained as a result of the seizure of her automobile, but the trial court denied the motion.

The record shows when the police located the car, the officers observed a reddish substance that appeared to be blood on the right front quarter of the car. Darby, upon explaining it was animal blood, agreed to have the car towed to the police station. Then, while officers awaited the towing of the car, State Trooper Boaz, afraid the substance might not survive the towing, obtained a sample. The car was eventually towed in and was not searched until a search warrant was obtained. A second sample was taken in the later search.

Darby argues her automobile was seized without a warrant, and scrapings were illegally taken from it. An automobile may be searched without a warrant under circumstances where there is probable cause to believe that the car contains articles that officers are entitled to seize. *Perrault v. State* (1986), Ind., 490 N.E.2d 322, 325. To justify a warrantless intrusion, a police officer need not have probable cause to make an arrest but must point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant an intrusion upon an individual's right of privacy. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Jones v. State* (1985), Ind., 472 N.E.2d 1255, 1258. Under the "plain view" doctrine, if a police officer, while in a place or position where he has a right to be, inadvertently discovers items of readily apparent criminality, he may properly seize the items. *Garrett v. State* (1984), Ind., 466 N.E.2d 8, 12; *Alcorn v. State* (1970), 255 Ind. 491, 496–98, 265 N.E.2d 413, 416–17; *See also Cochran v. State* (1981), Ind.App., 429 N.E.2d 672, 674. The police knew Nodine had been killed and suspected Darby was involved. Police saw a reddish substance which appeared to be blood on Darby's car. Darby agreed to have the car towed to police headquarters. Police feared the substance might not survive the trip and thus took a sample. These facts are sufficient to warrant the search and seizure of Darby's car.

Darby maintains she did not consent to the search and seizure of her automobile, but rather acquiesced in the announced intention of the officers to take her car. However, police officers testified she consented to the seizure of the automobile and having it taken to the police station for samples. Since the evidence conflicts on this point, the jury decides which testimony is true. *Earls v. State* (1986), Ind., 489 N.E.2d 516, 519. On review, we consider this as any other question of fact and neither reweigh the evidence nor judge the credibility of the witnesses. *Earls,* 489 N.E.2d at 519. Where a defendant voluntarily consents to a search, that search may not be contested as illegal at a later time.

*Earls,* 489 N.E.2d at 519. Therefore, the evidence was not illegally obtained and was properly admitted.

### III.

Darby next claims the trial judge erroneously participated in the adversarial process by *sua sponte* recirculating the murder weapon among the jury. Darby's service revolver was admitted into evidence and shown to the jury. Later, after a police firearms expert testified concerning his examination of the pistol and its operation, the judge stated he was going to show the pistol to the jury again. The judge said the firearms expert's testimony had acquainted some jurors with the operation of the weapon. Thus, their inspection of the weapon would be more meaningful.

Darby argues this conduct made the judge an advocate for the State. She maintains it was solely the prosecutor's role to decide if the jurors needed to re-examine the pistol. She argues when the judge *sua sponte* shows the jury an item of the State's evidence, there is an impermissible appearance of bias. Further, Darby maintains the judge's conduct distracted the jury from the true issues in the case.

Without question, a trial judge has a duty to remain impartial, to refrain from making unnecessary remarks, and to refrain from acting as an advocate for either party. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102, 1107; *Lawson v. State* (1980), 274 Ind. 419, 431, 412 N.E.2d 759, 767, *cert. denied* 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424. However, of equal importance is the trial judge's duty to manage and control the proceedings conducted before him. *Marbley,* 461 N.E.2d at 1106; *Lawson,* 412 N.E.2d at 767–68. A trial judge has the responsibility to direct the trial in a manner which facilitates the ascertainment of truth, insures fairness, and obtains economy of time and effort commensurate with the rights of both society and the criminal defendant. *Armstrong v. State* (1986), Ind., 499 N.E.2d 189, 191. A judge may intervene in the fact-finding process to promote clarity or dispel

obscurity so long as he does not improperly influence the jury with his opinion. *Fox v. State* (1986), Ind., 497 N.E.2d 221, 227; *Bruce v. State* (1978) 268 Ind. 180, 222–23, 375 N.E.2d 1042, 1065–66, *cert. denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662.

■ Here, the trial judge did not abuse his discretion by recognizing that the expert's testimony had increased the jury's ability to understand the pistol and by allowing them to handle the pistol again. Re-examination of the weapon after the firearms expert's testimony may also have enhanced the jury's ability to weigh the value of his testimony. Other than Darby's assertions, nothing shows that the judge's action enhanced the State's case simply because the evidence was a State's exhibit. The judge has not abused his discretion when the intervention is conducted in an impartial manner and the defendant is not prejudiced. *Fox*, 497 N.E.2d at 227. To show an abuse of discretion, a defendant must demonstrate how he was prejudiced by the court's actions. *Marbley*, 461 N.E.2d at 1107. Darby presents no basis to conclude the judge's action resulted in prejudice toward her. Since there was no demonstration of bias or prejudice against Darby, there is no basis for finding the trial court was bound to grant a change of venue during trial. The trial judge's actions were pursuant to his broad discretion to control the proceedings before him. We find no prejudice to Darby.

### IV.

Darby contends it was an abuse of discretion for the trial court to allow the State, over objection, to introduce rebuttal evidence which did not tend to explain, contradict or disprove any evidence already offered. The challenged evidence includes observations of Darby on the morning of the crime, an opinion as to her sanity on that morning, an opinion of Darby's ability to appreciate the wrongfulness of her conduct, and her consciousness of guilt. Darby claims the result was the admission of damaging and prejudicial evidence that Darby was purportedly in a good mood after the death even though she felt she had done wrong.

■ Rebuttal evidence is limited to that which tends to explain, contradict or disprove evidence offered by the adverse party. *Bell v. State* (1986), Ind., 495 N.E.2d 526, 528; *Norton v. State* (1980), 273 Ind. 635, 656–57, 408 N.E.2d 514, 529. The scope of rebuttal evidence is a matter left to the discretion of the trial court and failure to limit its scope is reversible error only for abuse of that discretion. *Bell*, 495 N.E.2d at 528. When the trial court permits testimony during rebuttal regarding a matter which is not in rebuttal, the irregularity will not be treated as reversible error unless the appellant was prevented from presenting rebuttal evidence thereto. *Bell*, 495 N.E.2d at 528; *Shelby v. State* (1972), 258 Ind. 439, 441, 281 N.E.2d 885, 887. Thus, where an appellant has a chance to rebut the challenged testimony, the error is not reversible. *Id.*

■ Here, Darby pleaded insanity and presented evidence in her case-in-chief concerning her having lost control. She introduced character evidence as to her good conduct, lack of excessive temper, and competency and efficiency. This evidence tended to show that her contrary behavior must have been caused by the derangement resulting from her heartbreaking situation. The State's evidence regarding her demeanor, appearance, and her evident self-control and awareness of her surroundings was thus appropriate in rebuttal to the evidence raised by her defense.

### V.

Darby next claims the court erred in giving the following instruction:

In this case the State is not required to prove the existence of malice or premeditation.

Darby claims the instruction is improper because it is a negative statement as to what the State does not have to prove. She claims the instruction was unnecessary since malice and premeditation are not elements of the offense.

Darby argues a negative instruction which tells the jury what is not at issue in the case is superfluous and should be refused when the jury has been instructed on the positive aspects of the same issue. She claims the instruction is merely an abstract statement of law. However, a statement as to what does not have to be proven is not the same as an instruction on principles of law which are not applicable to the evidence in the given case. The rule against giving abstract statements of law as instructions exists "only because such instructions may confuse or mislead the jurors, who are left uninformed as to how the rule stated applies to the case before them. Thus, giving such an instruction is reversible error only if it appears likely that the jurors were confused as to the law under which they were to decide the defendant's guilt or innocence." *Doyle v. State* (1984), Ind.App., 468 N.E.2d 528, 539, *trans. denied.*

■ The State maintains the instruction helped to define "knowingly and intentionally", which are terms of art requiring further instruction. Ind.Code Ann. § 35–41–2–2 (Burns 1985). The giving of jury instructions lies largely within the trial court's discretion and any error in a particular instruction will not warrant a reversal unless the error is of such a nature that the entire charge of which it is a part misled the jury on the law of the case. *Grossenbacher v. State* (1984), Ind., 468 N.E.2d 1056, 1059. Thus, the defining instruction telling the jury what "knowingly and intentionally" is not is clearly within the discretion of the trial court. *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, 1239. Since the jurors cannot be presumed to know that Indiana has excised premeditation and malice from the elements of homicide when those terms are still used in literature, drama and history, and in accounts of homicides from other jurisdictions, the instruction was proper. Since the instruction did not misstate the law, there is no error on this issue.

### VI.

Darby next claims the court erred in the giving the following instruction:

There is a presumption in the law that all persons are sane and intend the reasonable, foreseeable consequences of their acts.

Darby contends this instruction impermissibly shifted the burden of proving intent to her side. Mandatory instructions as to intent, even when these are mandatory rebuttable instructions, are impermissible. *Francis v. Franklin* (1985), 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344. Darby claims that the above instruction was an impermissible mandatory rebuttable presumption.

However, "if a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror would not have created an unconstitutional presumption." *Francis*, 105 S.Ct. at 1971. Instructions should be read as a whole and construed together. *Davidson v. State* (1982), Ind., 442 N.E.2d 1076, 1081.

■ The complained-of language was contained in the section of the instructions which discussed the insanity defense, and by its context was focused on mental condition, not intent. The language discussing intent reads:

A determination of the defendant's intent may be arrived at by the jury from a consideration of the defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. Intent to kill can be found from the acts, declarations and conduct of the defendant at or just immediately before the commission of the offense, from the character of the weapon used and from the part of the body on which the wound was inflicted.

This more specific language provided guidance to the jury on determining intent. As the trial court qualified the complained of instruction, the instruction does not have a

burden-shifting effect. *Jacks v. State* (1979), 271 Ind. 611, 625, 394 N.E.2d 166, 175. This instruction, coupled with the instructions on burden of proof, requires the finding of predicate facts in order to find intent. Thus, the result of the complained-of instruction, in context, was not a mandatory presumption. Further, in view of the overwhelming evidence in this case, we are not convinced this particular instruction so misled the jury that reversal is merited.

## VII.

Darby contends the sentence imposed was improper. Voluntary manslaughter is a class B felony for which the presumptive sentence is ten (10) years. Ind.Code Ann. §§ 35–42–1–3, 35–50–2–5 (Burns 1985). Darby was sentenced to twenty (20) years imprisonment. The trial court has the discretion to determine what weight to be given to aggravating or mitigating circumstances. *Arthur v. State* (1986), Ind., 499 N.E.2d 746, 748. When a sentence is within the statutory limits, we are not at liberty to set aside or alter the sentence unless the record indicates a manifest abuse of discretion. *Id.*

Darby maintains the court's statement of reasons shows the judge imposed the maximum sentence to correct what he viewed as an error by the jury in finding her guilty of voluntary manslaughter instead of murder. Darby cites *Gambill v. State* (1982), Ind., 436 N.E.2d 301, which is distinguishable. In *Gambill*, the judge explicitly stated he thought the jury returned the wrong verdict and that the evidence would support a conviction for murder. In contrast, the judge in this case did not state he thought the verdict was a mistake. Although he did say he thought Darby was fortunate to get the verdict she did, he also said "I in no way quarrel with the jury's decision." Thus, the trial court accepted the jury's conclusion.

In *Gambill*, the trial judge stated no factual basis for finding aggravating circumstances. Here, the trial judge pronounced the reasons for imposing the maximum sentence. He considered the number of shots and the nature of the wounds as aggravating circumstances. Nodine was shot six times, any one of which could have been fatal. The judge observed that as a health care employee and as a reserve deputy sheriff, Darby had devoted herself to providing care and safety for the public, yet after asking Randolph to get medical assistance, she could still fire one more shot into Nodine. Further, Darby was sufficiently violent to allow her to press the weapon against a person who must already have been helpless and shoot at least twice more.

The judge further found, as an aggravating circumstance, that a reduced sentence would depreciate the seriousness of the crime. Darby claims this finding is an inadequate basis to support the imposition of an enhanced sentence. Darby erroneously argues this can be used only to negate the possibility of reducing a sentence below the presumptive sentence, not to aggravate a sentence. By the express language of Ind.Code Ann. § 35–38–1–7, the legislature intended that the nature and circumstances of the crime committed shall be considered as aggravating or mitigating circumstances, otherwise this subsection would have no meaning. *McNew v. State* (1979), 271 Ind. 214, 220, 391 N.E.2d 607, 611–12.

Darby also claims the finding is improper because it merely tracks the statutory language of Ind.Code Ann. § 35–38–1–7 Burns Supp.1987. Darby contends the trial court's statement of reasons for aggravating the sentence is inadequate, citing *Page v. State* (1981), Ind., 424 N.E.2d 1021. However, as Darby demonstrated in her discussion of the reasons given orally by the trial court, the judge provided a statement of reasons. As the record reflects, these reasons not only gave Darby much matter for discussion, they gave this Court a basis to review the sentence. The trial court adequately supported the sentence imposed.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DICKSON, J., concurs in result without opinion.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice—dissenting.

The jury in this case received the following instruction: "There is a presumption in the law that all persons are sane and intend the reasonable, foreseeable consequences of their acts." In contrast to the majority viewpoint, I believe the giving of this instruction was reversible error.

Two United States Supreme Court cases have dealt with this issue, both holding that instructions of this nature shift the burden of persuasion on the issue of intent to the defense in violation of the Fourteenth Amendment requirement that the State prove every element beyond a reasonable doubt. *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The majority concludes the giving of this instruction was not reversible error due to the fact another instruction more specifically dealing with the intent element was also given. However, as the Supreme Court stated in *Francis,* "[n]othing in these specific sentences or in the charge as a whole makes clear to the jury that one of these contradictory instructions carries more weight than the other. Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." 105 S.Ct. at 1975. The jury could have relied solely on the infirm instruction or could have interpreted the two instructions to mean that proof beyond a reasonable doubt as to intent could be satisfied by the presumption. The possibility of an impermissible shift in the burden of proof demands reversal.